**SEEFELDT v. UNITED STATES.**

No. 4057.

United States Court of Appeals
Tenth Circuit.

June 29, 1950.

714

Richard M. Krannawitter and Albert R. Kool, Albuquerque, N. M., for appellant.

Everett M. Grantham, U. S. Atty., Albuquerque, N. M., for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Appellant, hereinafter referred to as defendant, was tried and convicted upon an indictment charging that "on or about February 1, 1949, at Albuquerque, in the State and District of New Mexico, the defendant * * * received and concealed a motor vehicle, to-wit: a 1949 Ford Sedan, * * * moving as a part of interstate commerce, and the said defendant then knew the motor vehicle to have been stolen" in violation of Title 18 U.S.C.A. § 2313. The case was tried to the court without a jury and this appeal is from the judgment and sentence entered upon the conviction. To constitute a violation of the foregoing statute, the burden was upon the government to prove that at the time the defendant received the automobile he knew it was stolen, and in addition that it was moving as, or was a part of interstate commerce. Defendant contends that there was insufficient evidence to show the existence of these two essential elements.

The evidence establishes that the automobile in question was stolen from its owner in Denver, Colorado, on December 27, 1948. On that date the defendant mailed a letter to Howard L. Downing at Santa Fe, New Mexico, inquiring if he could obtain New Mexico titles for four used automobiles, none of which was the automobile described in the indictment. These titles were to be obtained without the customary title papers. Downing, at the time, was a truck driver and a former employee of the motor vehicle department of the State of New Mexico which issues titles to motor vehicles. Some time early in February of 1949, the defendant went to Santa Fe to see Downing about the titles and told him that he could get him a 1949 Ford for $1000.00 or $1100.00, and wanted to know if a title for the car could be obtained. At the time, defendant was driving the automobile described in the indictment. A short time later defendant called by telephone and being unable to get in touch with Downing at Santa Fe left word at his office that he had an automobile for him in Albuquerque and to call defendant upon his return, which was done early in March. The defendant wanted to know if Downing was making any progress in obtaining the titles to the automobiles previously mentioned and stated that he desired to talk to Downing in Santa Fe. Upon arrival defendant told Downing that he would be able to obtain ten automobiles from the Ford assembly line in Kansas City; that someone in connection with the Ford plant was helping and that the cars were being slipped through the assembly line without being accounted for and if title could be obtained Downing could make some money. Downing, believing the automobiles were stolen, had previously reported the matter to the Federal Bureau of Investigation which instructed him to get the motor number of the car defendant was driving. With the consent of the defendant, Downing removed the number plate from underneath the hood of the car and delivered it to the Federal agents. On March 28, 1949, special agents of the bureau observed the automobile at the defendant's home in Albuquerque. It disappeared three days later. An attempt was made to locate it without avail. On April 5th the defendant reported to his attorney that he was being followed and was advised to get in touch with federal officers which he did through a member of a detective agency who advised the officers that the defendant was concerned because he

felt he was being observed and thought it might be in connection with a stolen car. Defendant then reported to the federal agents, admitted that he had the automobile in question and related a long and rambling story as to how and when he came into possession of it. He said that he had met the owners by accident and had made arrangements in a night club to take the car and sell the same on a commission basis; that he did not know who these people were or where they lived; that they gave him no evidence of title or any other memoranda relating to the transaction and that he had not seen them since except on one occasion when he met one of them on the street about a week later and he merely inquired of him if the automobile had been sold. No one could be located who resembled the descriptions which he gave of these persons.

He advised the officers that he would turn the automobile over to them the following day. A meeting was arranged with the defendant in the office of his attorney and the automobile was to be obtained and delivered to the officers there. The defendant would not permit the officers to accompany him to the place where the automobile had been left. Upon delivery it was discovered that the motor number had been filed off and it was necessary to obtain a description of the same from a secret number. Upon trial of the case, the defendant testified to an entirely different story as to his possession. He said that in fact he had received the automobile from a man named Wilson and that Wilson had told him that he had obtained possession in the manner which he had previously related to the officers. Several weeks later Wilson was located and the case was reopened and he was permitted to testify. He related how he had received the automobile from unknown persons and had delivered it after five days to defendant, a used car dealer, to sell for $2000.00. He did not know who the people were and he did not know their names or where they lived except that they were traveling men and had a position in the east. The automobile, when delivered to him, had Texas license plates on it which were removed by these persons.

From this evidence the trial court found that the defendant received and concealed the car knowing it to have been stolen, and at the time that it was so received and concealed it was moving in interstate commerce. Our function is limited to an inquiry as to whether the verdict of the court finds support in the evidence. Madsen v. U. S., 10 Cir., 165 F.2d 507, 511. In determining the question the evidence and the inferences to be drawn therefrom are viewed in the light most favorable to the prosecution. Wilder v. U. S., 10 Cir., 100 F.2d 177, 182. A careful review of the record convinces us that the verdict is sustained by substantial evidence. Possession by the defendant of the recently stolen automobile justifies the inference that the possession is guilty possession and may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence. 8 Blashfield Cyc., Auto Law, Perm.Ed., § 5594; Dunlop v. U. S., 165 U.S. 486, 502, 17 S.Ct. 375, 41 L.Ed. 799; Wilson v. U. S., 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090; McAdams v. U. S., 8 Cir., 74 F.2d 37, 41; Wertheimer & Goldberg v. State of Indiana, 201 Ind. 572, 169 N.E. 40, 43, 68 A.L.R. 178, annotation 187. The court, we think with ample justification, characterized the explanation made by the defendant of his possession as "most extreme, extraordinary and even fantastic." Considering all the circumstances together with the conduct of the defendant, there is sufficient evidence to sustain a finding that defendant knew the automobile was stolen without relying upon the inference of the possession of recently stolen property. We think too that the circumstances surrounding the possession of the automobile by the defendant are sufficient to sustain the finding that it was moving in interstate commerce when received by the defendant. The automobile had recently been transported from Colorado to New Mexico. Except for the fantastic story of Wilson and the defendant, no one else had possession of it in New Mexico except the de-

fendant. He was trying to obtain a New Mexico title through devious means. At about the time the car was stolen, defendant was making arrangements to obtain New Mexico titles for stolen Ford automobiles which were to be brought to New Mexico. When he first reported to the agents of the Federal Bureau of Investigation he stated that he knew about a ring of car thieves operating in Colorado, Northern Texas and New Mexico. When he knew he was under surveillance he concealed the car and refused to let officers accompany him to the place of concealment.

Judgment is affirmed.