John Kenneth REAL, Appellant,

v.

UNITED STATES of America,
Appellee.

Gilbert Rolland VIGIL, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 7435, 7436.

United States Court of Appeals
Tenth Circuit.

Dec. 24, 1963.

Rehearing Denied Feb. 11, 1964.

William C. Boston, Jr., Oklahoma City, Okl., for appellants.

Merle R. Knous, Asst. U. S. Atty., Denver, Colo. (Lawrence M. Henry, U. S. Atty., Denver, Colo., with him on the brief), for appellee.

Before PICKETT, LEWIS and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

The defendants were convicted by a jury for the theft of property from an interstate shipment, of the value of more than $100.00, in violation of 18 U.S.C. § 659. This appeal presents only the question of the sufficiency of the evidence to sustain the conviction. It is contended that there is no substantial evidence to establish that the property found in the possession of the defendants was that which was stolen from an interstate shipment or that defendants committed the larceny. We have examined the record, and conclude that as to these contentions, the circumstances are such as to present a question for the jury.

The commission of a crime may be established by circumstantial evidence. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, reh. denied 348 U.S. 932, 75 S.Ct. 334, 99 L. Ed. 731; Sadler v. United States, 10 Cir., 303 F.2d 664; Corbin v. United States, 10 Cir., 253 F.2d 646; United States v. Kemble, 3 Cir., 197 F.2d 316; United States v. Dolasco, 3 Cir., 184 F. 2d 746; Rosenberg v. United States, 10 Cir., 120 F.2d 935. Unexplained possession of recently stolen articles is evidence of participation in the larceny. McNamara v. Henkel, 226 U.S. 520, 33 S.Ct. 146, 57 L.Ed. 330; Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799; Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; United States v. Lefkowitz, 2 Cir., 284 F.2d 310; Torres v. United States, 9 Cir., 270 F.2d 252, cert. denied 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741; Manning v. United States, 10 Cir., 215 F.2d 945; Seefeldt v. United States, 10 Cir., 183 F.2d 713.

The case was submitted to the jury on the evidence of the prosecution. This evidence disclosed that on the 15th day of October, 1962, a truck owned by Consolidated Freightways, a common carrier, containing interstate shipments of property, was stolen after it had been parked on a street in Denver, Colorado. It was found later on a country road some distance northeast of Denver, with

all of its cargo missing. On the truck, with other interstate shipments, was one by Harker China Company, from West Virginia, consigned to Riverton, Wyoming.[1] This shipment consisted of 16 master cartons of china, each containing 12 smaller cartons. The trade-name on this product prior to August 25, 1962, was "Stone China." After that date the manufacturer made dishes upon which the trade-name "Stone Ware" was used. At the time the shipment was made to Riverton, Wyoming, orders were filled from dishes some of which had the trade-name "Stone China" and some "Stone Ware." On October 16, 1962, the defendant Vigil offered to sell a set of Harker dishes to a cook at the El Palomar Bar in Denver, Colorado. The next day, with the defendant Real, Vigil sold one set of Harker china to the cook, and another set to a friend, Martinez. Later another set of such china was delivered to the owner of the El Palomar Bar. All of this china was a Harker Company product, some of which bore the trade name "Stone China" and some "Stone Ware." It was identified by the President of the Harker Company as the identical kind of china shipped from Chester, West Virginia to Riverton, Wyoming.[2] The Riverton shipment was not delivered, and it was necessary for the Harker Company to fill the order with another shipment.

On the 17th of October, two men rented a double garage in northeast Denver. On the 18th of October, Vigil and Real requested Martinez to drive his pickup truck to Vigil's home, where it was loaded with cartons from a garage there. Martinez testified that Vigil told him that "his mom was mad at him" and he wanted to get that stuff out of the garage. Some of the cartons taken from the garage bore the insignia or trademark of General Electric products. These cartons were described as being three feet wide and four feet high, and possibly four feet long.[3] After the truck was loaded, the cartons were covered with a black plastic material which concealed them from view. During the process of moving this property, Real remarked to Martinez that "they'd made a haul and hoped they didn't get busted." Later, at the El Palomar Bar, Martinez was given a set of Harker dishes taken from the trunk of an automobile used by Vigil and Real, for the use of his truck. On the 19th day of October, agents of the F.B.I. located a quantity of material of the same kind as that which was in the truck when it was stolen, in a ravine several miles from where the empty Consolidated Freightways truck was found.

1. The indictment charged that the defendants stole goods and chattels while in interstate commerce, as follows:
   1. One Coppertone General Electric Oven, Serial No. JXDO8125
   2. One Turquoise General Electric Built-in Oven, Serial No. XWOO3123
   3. One General Electric Double Oven, Built-in Range, Serial No. WOO4245
   4. 16 Cartons of Harker Brand China
   5. 13 Cartons of Gates Rubber Co. belting
   6. 32 Cartons of Gates Rubber Co. rubber hose
   7. 1 reel of Union Wire Rope.

2. In connection with the availability of this product in the Denver area, the company's president testified:
   "Q. For all you know, these items could have come from May Company and Denver Dry, couldn't they?
   "A. No, because we don't have Stone China with any of those stores.
   "Q. What do you have with those stores?
   "A. We have our semi-vitrious ware, our Earthenware, our decal-decorated pattern or our patterns that are geared for that class of trade.
   "Q. Does anyone here in Denver carry your Stone Ware?
   "A. Not that I know of.
   "Q. Anyone near Denver, someone in Riverton?
   "A. Well, the only one in Riverton that I know of who carries this item is Temple Drug."

3. There was testimony that a shipment from Denver, Colorado to Lander, Wyoming, included the General Electric items described in the indictment and were not delivered to the consignee.

Most of this material was in a burned condition.

The foregoing circumstances, together with the surreptitious manner in which Vigil and Real, who were not merchandisers, handled and disposed of the goods, lead to only one rational conclusion, that is, the property was that which had been stolen from the Consolidated Freightways truck. Their unexplained possession was sufficient to sustain a finding that the defendants participated in the theft. There is nothing in Sapir v. United States, 10 Cir., 216 F.2d 722, aff'd as modified 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426; or Karn v. United States, 11 Alaska 225, 158 F.2d 568, to the contrary.

Affirmed.