John Thomas FITTS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7513.

United States Court of Appeals Tenth Circuit.

Feb. 28, 1964.

Rehearing Denied April 6, 1964.

Wayne J. Fowler, Denver, Colo., for appellant.

Robert K. Ball, Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., Oklahoma City, Okl., appearing with him on the brief), for appellee.

Before PICKETT and LEWIS, Circuit Judges, and KERR, District Judge.

KERR, District Judge.

John Thomas Fitts was indicted, tried and convicted by a jury for the interstate transportation of a stolen motor vehicle from Oklahoma City, Oklahoma, to Denver, Colorado, in violation of 18 U.S.C. § 2312. Appellant challenges the sufficiency of the evidence to support the verdict and contends that the government did not sustain its burden of proof on the issue of his competency. He claims that he was entitled to an acquittal on the ground that the government failed to prove the essential elements of the offense, namely, the identity of the stolen automobile and its unlawful transportation across state lines.

Contrary to appellant's argument, the evidence conclusively establishes that the 1956 Buick with the vehicle identification number 5C4005850 as described in the indictment, was the property of Melvin Carl Swickey, an operator of three used car lots in Oklahoma City; that it was stolen from his used car lot where he had parked it on September 19, 1962; that Mr. Swickey had reported the stolen Buick to the Oklahoma City Police Department on September 20, 1962; and that on September 24, 1962, Fitts sold that same Buick to E. L. Yarbough in Denver, Colorado.

The sequence of events in the interim between the theft of the Buick in Oklahoma and the time of its sale in Colorado shows that appellant transported the stolen Buick in interstate commerce, knowing the same to have been stolen. Harold Cleo Neer, appellant's companion between September 20 and 24, 1962, testified that he met Fitts on September 20, 1962, in Eldorado, Kansas. At that time Fitts was driving a 1955 or 1956 blue and white Buick. They drove that Buick to Augusta, Kansas, where they stayed overnight. On September 21, 1962, they drove the Buick to Ponca City, Oklahoma, where they stopped at a tavern and drank beer with two Indians. Neer also testified that while they were in the tavern, Fitts acquired from one of the Indians a driver's license bearing the name of Paskell LeClair.

F.B.I. Agent Sayers testified that appellant told him that "LeClair Paskell" drove him in the Buick from Oklahoma City to Wichita, Kansas, where Paskell gave appellant the car. Paskell denied this. He testified that he hadn't been in Oklahoma City since 1958, and that the last time he was in Wichita, Kansas, was in 1956. He said that he was in the tavern in Ponca City in September 1962, that he was pretty drunk then, and that he lost his billfold containing his Oklahoma driver's license. When appellant was arrested he had on his person the driver's license of Paskell LeClair.

From Ponca City, Oklahoma, Neer and Fitts drove the Buick to Woodward, Oklahoma, and from Woodward they proceeded in the Buick to Denver, Colorado, as appellant wanted to see his wife, who lived in Denver. There is evidence throughout the record that during this time both men were drinking considerably. Shortly after their arrival in Denver on September 23, 1962, they observed a man sitting in a gray 1954 Ford. Fitts talked with him about trading their cars. On the following day, Fitts met with E. L. Yarbough, the owner of the Ford, who agreed to trade the 1954 Ford for the Buick and to pay the difference of $125. Fitts, Neer and Yarbough proceeded to the North Side Denver Bank where a bill of sale was executed by Fitts, using the name of LaClair Paskell, which is obviously an inversion of the name on the Indian's driver's license. The Buick is identified on the Bill of Sale as bearing serial number 5 C 4005850. Yarbough paid Fitts the sum of $50.00 and agreed to pay him the balance of $75 the following day upon delivery of the certificate of title to the Buick. Fitts took the Ford, but never delivered the title to Yarbough, nor did he ever return to collect the $75 from Yarbough. Thereafter appellant was seen driving the Ford with the Colorado license plates in Oklahoma City.

Yarbough's testimony concerning his transactions with Fitts, known to him as

La Clair Paskell, was not contradicted. He testified further that while appellant was in jail in Oklahoma City, Yarbough wrote to him in an attempt to recover his Ford. Fitts answered Yarbough, his letter reading in part as follows: "I cannot give any information about the Ford but expect to make bond on this within the next week. If you will bear with me I am sure we can come to a *satisfactory* agreement. Please forgive me for being, not to plain in this letter. You can be sure that I will see you just as soon as I can be released on bond. I'm having a little difficulty raising $250.00 but I'm sure that I will eventually make the grade. You won't be sorry. So please be patient. I understand that you have a bill of sale so keep it. (Signed) John Fitts".

 Thus, the evidence indisputably shows that the Buick sold by Fitts in Denver was the same car which the legal owner reported to the Oklahoma City Police Department as stolen; that Yarbough, the purchaser, identified Fitts as the man he knew as LaClair Paskell, who sold him the stolen Buick. Furthermore, Neer, who was with appellant in Oklahoma and in Denver, testified that in the course of the negotiations of trading the car with Yarbough, Fitts used the name of Paskell, which appeared on the Indian's driver's license. True, some of the evidence is circumstantial, but it is well established that circumstantial evidence may establish the commission of a crime. Real v. United States of America and Vigil v. United States of America, and authorities cited therein, 10 Cir., 1963, 326 F.2d 441. The government is entitled to the benefit of inferences which reasonably can be drawn from the evidence viewed in its most favorable aspect. "Unexplained possession of recently stolen articles is evidence of participation in the larceny". Real v. United States of America and Vigil v. United States of America, supra. In Seefeldt v. United States, 10 Cir., 183 F.2d 713 (1950), it was said: "Possession by the defendant of the recently stolen automobile justifies the inference that the

possession is guilty possession and may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence." In the case at bar Fitts made no explanation of his possession of the Buick. In fact, none of the government's evidence with reference to the Buick is denied.

The case was tried to a jury, before a thoroughly competent and fair judge who took all steps necessary to protect each and every right of the appellant. He was arraigned on October 19, 1962; he conferred with his court-appointed counsel and entered his plea of "Not Guilty". On December 12, 1962, the Court ordered that he be committed to the Medical Center for Federal Prisoners in Springfield, Missouri, for a period of 90 days for psychiatric examination for the purpose of determining his mental capacity to plead, advise with counsel, or proceed to trial. He was returned from the Medical Center on March 16, 1963. Prior to the commencement of the trial on April 18, 1963, the court stated, outside the presence of the jury, that it had received a report from the staff of doctors at the Medical Center "saying that in their opinion the defendant possessed sufficient mental capacity to be able to assist in his defense and understand the character of the charges against him". The Court thereupon found and ordered that the appellant was mentally and physically able to proceed to trial.

Dr. Ray Worsham, a specialist in neurology, testified on behalf of Fitts. He stated that he had a "psychiatric interview" with him on the Friday before the trial at about 2:15 p. m., in the County Jail. He testified also, that he examined the report of the Medical Commission in Colorado dated September 25, 1959, which stated, in substance, that Fitts was unable to take care of himself or his affairs because of chronic alcoholism and brief periods of accute hallucinosis following the withdrawal of alcohol. Dr. Worsham took into consideration, also, the fact that Fitts was committed to the State Hospital of Colorado on October 9, 1959, from which institu-

tion he escaped on November 14, 1959. On the basis of his forty-five minute interview with the appellant and the records from the Colorado institution, it was Dr. Worsham's opinion that on or about September 20, 1962, Fitts did not have the mental capacity to understand the nature and consequences of his actions or understand an offense such as the transportation in interstate commerce of a motor vehicle knowing it to have been stolen. This testimony of Dr. Worsham was the only evidence in the trial attempting to show that Fitts was insane at the time of the commission of the crime charged.

The jury, however, had the opportunity to hear and compare the evidence of Dr. Charles Oppegard, the Chief Psychiatrist of the Springfield Medical Center, where Fitts was examined and observed during his ninety-day commitment. Dr. Oppegard explained the routine procedure practiced by the staff at the Medical Center with respect to their examinations, tests, conferences, and reports. The findings of the various psychiatrists are pooled, on the basis of which a final report of the patient is submitted. Fitts was given a physical examination at the Medical Center and several psychological tests. Dr. Oppegard also had the diagnostic evaluation from the Colorado State Hospital, which report showed that Fitts had no indications of psychosis. Dr. Oppegard testified that there was no finding that he suffered from any neurological disorder that would relate to the offense for which he was being tried. During his stay at the Center Fitts exhibited no behavior which would indicate that he was seriously mentally ill, and he evidenced no severe depressive reaction. His tests indicated no evidence of psychosis or severe mental illness at the time nor any indication of these in the past. Dr. Oppegard testified that in the diagnostic opinion of the staff of the Medical Center, appellant fit in the alcoholic category of alcoholic hallucinosis, that is, the type of person who continued to drink in order to avoid experiencing hallucinations. As Dr. Oppegard ex- plained, the characteristic of this alcoholic psychosis does not occur when a person is still drinking, as appellant was between September 20, 1962, and September 24, 1962.

The Court properly instructed the jury concerning the elements of the crime, the degree of proof required to prove the appellant's guilt and the issue of the sanity of the appellant. Fitts does not complain of the court's instructions. He asserts, rather, that the government failed to sustain its burden of proving beyond a reasonable doubt that he had the mental capacity to form the criminal intent necessary to commit the alleged crime. The appellate court is not the trier of the facts. The jury and the trial court observed the witnesses, heard, weighed and compared their testimony. The record shows beyond a doubt that there was substantial evidence to warrant the jury's conclusion that Fitts was sane at the time of the commission of the criminal act charged.

Appellant complains that the court committed prejudicial error in admitting the "hearsay or irrelevant" testimony of Dr. Oppegard. This contention is without merit. As Dr. Oppegard explained to the trial court it was his function as Chief Psychiatrist at the Medical Center at Springfield to correlate the findings of the doctors and other personnel at the Medical Center which were a result of their examinations and observations of the appellant. Dr. Oppegard's testimony based on these reports and upon his conferences with the doctors and with the appellant cannot be said to be within the hearsay rule, but rather a part of the case history upon which he based his opinion.

Appellant further avers that prejudicial error was committed by the evidence concerning prior commitments and criminal charges pending against him. His own exhibits injected the issue of prior criminal offenses. The Court properly instructed the jury not to take into consideration the charges that may have been filed against the ap-

848

pellant but that the jury could take into consideration such evidence as the exhibits themselves revealed. On another occasion, the trial court instructed the jury not to consider the Doctor's testimony in respect to the reports from other institutions except insofar as they may concern the mental condition of the appellant. "The fact that he may have been tried and sent to other institutions," said the trial judge, "has no bearing upon the guilt in this case and that will be stricken from your consideration."

It is our opinion that the evidence as a whole, together with all the inferences fairly to be drawn from it, was sufficient to sustain the jury's verdict and to withstand appellant's motions for a directed verdict of acquittal. It is also our opinion that no prejudicial error was committed in the admission of the evidence of which appellant complains.

Affirmed.