James E. GARRISON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 8219.

United States Court of Appeals
Tenth Circuit.

Nov. 3, 1965.

William P. Waggener, Denver, Colo., for appellant.

Lorin J. Broadbent, Asst. U. S. Atty. (William T. Thurman, U. S. Atty., on the brief), for appellee.

Before PHILLIPS, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellant, Garrison, was tried and convicted before a jury for the transportation in interstate commerce of a stolen motor vehicle and appeals from that conviction.

Two points are urged on this appeal: (1) That the government's evidence was insufficient, and (2) that the trial court erred in not giving an instruction to the jury to the effect that the information was no evidence of the guilt of the accused.

The evidence was undisputed that the car in question had been stolen in Denver, Colorado, had thereafter been transported in interstate commerce to Tooele, Utah, and was a dark colored Plymouth station wagon bearing Colorado license plates.

Witness Brown, who was manager of the Beehive Lodge in Salt Lake City, testified that during the latter part of February, at about five, six or seven o'clock in the afternoon, the defendant, accompanied by codefendant Anaya, came into his place of business and said he was broke and hungry; Brown then of-

fered to feed both Garrison and Anaya and did so; Garrison again said he was broke and wanted to sell a car tire but Brown did not buy the tire; that after eating, the two men went upstairs in the hotel and, after they caused a disturbance there, he asked them to leave the hotel; as the two men started to leave the hotel Garrison told Anaya to get the car; and as they left he saw them both in a dark colored Plymouth station wagon with the codefendant driving.

Witness Beebe, who runs a motel and cafe at Tooele, Utah, testified: That on a Thursday night, either February 25 or 26, at about 2:00 o'clock a. m. Garrison came to the front door of the motel and said he was cold; Beebe let him come inside to get warm and told him he could not stay there and Garrison walked out of the door and got into a black station wagon with Colorado license plates on it; that the car horn was honked and then someone came to the door again and knocked; Beebe then called the sheriff's office: and that the next morning the car was still parked in front of the motel.

Park, a Deputy Sheriff at Tooele, Utah, testified that during the morning of February 26 he was dispatched to Beebe's Motel because of a disturbance; when he got there he found a black Plymouth station wagon with Colorado plates on it; Garrison was inside the car in the front seat slumped over the steering wheel and the codefendant was lying down in the back seat; both men appeared to be intoxicated and were placed in jail; later that morning, he checked the license plates and serial number on the car and impounded it in a garage.

At the close of the government's evidence counsel for the defendant moved for a dismissal on the ground that the government had failed to prove "that the accused transported, aided, or abetted, or in any way caused the movement of the vehicle from Colorado to Utah, * *." The trial judge denied the motion "in view of the inference of ownership from the offer to sell the tire, * * *." We believe the trial court was correct in its ruling. In addition to this particular bit of evidence pointed out by the trial court in its ruling, we find additional evidence to support the denial of the motion.

At the time Garrison and Anaya were ordered to leave the Beehive Lodge, Brown testified that Garrison directed Anaya to go get the car, Anaya got the car and both then drove off in it with Anaya driving. Brown also described the car as a dark colored Plymouth station wagon. Beebe's testimony reflects that a black station wagon bearing Colorado license plates parked in front of his motel about 2:00 o'clock a. m. and Garrison came to the motel front door and when he left the motel he got into this same described station wagon which was identified as the stolen car in question. The deputy sheriff later found this same car parked in front of the Beebe Motel with Garrison sitting in the front seat slumped over the steering wheel and Anaya lying down in the back seat. This evidence together with the offer by Garrison to sell the tire certainly shows some control by Garrison over the recently stolen car and was sufficient for the jury to infer that Garrison was at least an aider and abettor in the transportation of the car and, as such, had possession of it as his codefendant did.

As in many Dyer Act cases the only evidence showing knowledge on the part of Garrison that the car transported was stolen was circumstantial. It is well settled that from the proof of the possession of a recently stolen motor vehicle, unless such possession is satisfactorily explained, the jury may properly infer that the possessor knew the car was stolen when he transported it in interstate commerce. Grandsinger v. United States, 10 Cir., 332 F.2d 80; Fitts v. United States, 10 Cir., 328 F.2d 844, cert. denied, 379 U.S. 851, 85 S.Ct. 96, 13 L.Ed.2d 55; Seefeldt v. United States, 10 Cir., 183 F.2d 713; Fitts v. United States, 10 Cir., 284 F.2d 108. Possession of a motor vehicle is evidenced by control over it and may be in one or more

persons. The direct evidence set out above shows that Garrison did exercise some control over the vehicle and it was sufficient to prove possession in him as well as in his codefendant. The court carefully instructed the jury on "possession" and also on "aiding and abetting." From all of the evidence the jury may very well have found that Garrison was either a principal or an aider and abettor and as either one had possession of the car and the jury then could have properly inferred from such possession, knowledge on his part that, at the time the car passed in interstate commerce, it was stolen.

After the government completed its case in chief the defendant took the witness stand, first admitted numerous felony convictions and further testified: That he met his codefendant in Denver and rode with him in the car to Utah but denied knowledge that the car was stolen until after they arrived in Utah. He admitted buying gasoline on the trip but testified that he did not drive the car at any time. He also denied attempting to sell any parts off the car during the trip.

As rebuttal, the government put the codefendant, Anaya, on the stand. He told about meeting Garrison in Denver; that Garrison told him about his desire to go to Reno, Nevada, and he told Garrison he could get a car and Garrison said, "Well, I'll buy the gas, if you drive;" Garrison bought all of the gasoline on the trip; and he didn't tell Garrison that the car was stolen until they got to Utah. An F.B.I. agent then took the stand and testified to a statement made to him by Anaya to the effect that both Garrison and Anaya had stolen the car in Denver, which was admitted only for impeachment of a conflicting part of Anaya's testimony.

Again, at the close of all the evidence, Garrison moved for a judgment of acquittal on the grounds that the evidence was insufficient and the motion was denied. We have no hesitancy in sustaining the trial court. From the above recited evidence and after our careful consideration of the entire record before us, we must conclude that the government in its case in chief made a submissible case, the case was even strengthened by the defendant's own testimony and by the rebuttal evidence and the trial court properly let the case go to the jury.

■ There is no basis for the second point raised here by appellant. The transcript of the voir dire examination of the jurors by the court shows that at the start of the trial the judge read the information to the entire jury panel and then advised them, expressly stating "This is simply a charge against the defendant. It in no way constitutes evidence against him and is simply a means of bringing to the attention of the court and jury for a determination of guilt or innocence in the manner provided by law the claims of the government against the defendant." At the end of the trial, the court carefully gave to the jury the burden of proof and presumption of innocence instructions and explained the types of evidence that the jury could consider. We do not believe there was any necessity to repeat at that time the admonition that the information should not be considered as evidence in the case. It should also be noted that there was no objection made after the instructions were given because of the failure of the court to formally charge the jury at that time concerning the information.

Affirmed.