Billy Wayne WHEELER and Johnnie Green, Jr., Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 9388, 9389.

United States Court of Appeals Tenth Circuit.

Sept. 18, 1967.

William L. Fry, Wichita, Kan., for appellant Wheeler.

Karl W. Friedel, Wichita, Kan., for appellant Green.

James R. Ward, Topeka, Kan. (Newell A. George, Topeka, Kan., on brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

MURRAH, Chief Judge.

Appellants Wheeler and Green were jointly tried and convicted by a jury and sentenced for knowingly transporting a stolen vehicle in interstate commerce in violation of the Dyer Act, 18 U.S.C. §§ 2, 2312. In these consolidated appeals both appellants contend (1) that the evidence is insufficient to support the jury's verdict and the trial court should have directed judgments of acquittal; and (2) that the trial court erroneously refused to grant a new trial on the grounds that two of the court's instructions were improper and prejudicial, that prejudicial evidence was improperly admitted, and that the case should have been transferred and tried in the Southern District of California. Wheeler also seeks a new trial on the basis of newly discovered evidence. We agree with the trial court's rulings and affirm the judgments.

It is conceded that on May 26, 1966, a 1959 Ford automobile was stolen from a used car lot in Pacoima, California, and that appellants and their female companion, Wanda Harris, were occupying the vehicle when it was recovered three days later at Goddard, Kansas. The Government introduced unrebutted evidence that Wanda Harris and Wheeler were together with Green in Pacoima early in the evening on May 26 and that Wanda Harris and Wheeler decided to go to Kansas City to get married. At about 9:00 p. m. Wheeler and Green left Miss Harris indicating that they were going to obtain an automobile from one Charles Jackson in Los Angeles. About an hour and a half later, they returned with the 1959 Ford, later identified as the stolen vehicle. Wheeler was driving. Shortly thereafter the three departed on their planned trip to Kansas City and "took

turns" driving. When the vehicle was stopped in Kansas, Miss Harris was driving, Wheeler was beside her in the front seat and Green was sitting in the rear seat. Green's undisputed testimony in his own behalf was to the effect that he and Wheeler met Charles Jackson at a "taco stand" in Pacoima where Wheeler, in Green's presence, paid Jackson $30 to rent the Ford for fifteen days and the car was surrendered to him.

■ Attacking the sufficiency of the evidence appellants contend that the Government failed to prove the necessary elements of the crime, i. e. that appellants knew the car was stolen and that they transported it in interstate commerce, i. e. see Allison v. United States, 10 Cir., 348 F.2d 152. In argument on the motions for acquittal at the close of the Government's evidence and at the close of all the evidence appellants conceded the evidentiary rule that proof of possession of an automobile recently stolen in another state, unless satisfactorily explained, will support an inference that the possessor knew the vehicle was stolen and that he transported it in interstate commerce. See Garrison v. United States, 10 Cir., 353 F.2d 94; Fish v. United States, 10 Cir., 371 F.2d 438, 439; Allison v. United States, supra.; Reese v. United States, 10 Cir., 341 F.2d 90. But, they strenuously argued that the evidence was wholly insufficient to show that at the time the vehicle was stopped and they were apprehended they were exercising "control, dominion or authority" over the vehicle as required to effect the necessary "possession". They correctly contend that being a mere passenger in a stolen automobile moving in interstate commerce does not prove requisite possession so as to give rise to the presumption of guilty knowledge. And, of course, if the premise of possession fails, the presumptions must necessarily fall with it. We think, however, that unlike Allison v. United States, supra, and like Garrison v. United States, supra, the evidence substantially supports an inference either that the appellants were jointly exercising control, dominion and authority over the stolen car or that at least Wheeler was in control and Green was an "aider and abettor" within the meaning of the statute. Moreover, appellants' contention that they rented the car from Jackson and were in possession without guilty knowledge is inconsistent with their denial of requisite possession. The jury was entitled to resolve the inconsistency.

■ On the motion for new trial appellants complained of the correctness of the court's instructions on possession and particularly on the refusal of the court to instruct on the meaning of possession in terms of control. But no request was made for such an instruction and no objection to the instructions as given was made until the motion for new trial. This, of course, came too late.

This brings to the forefront the question of the propriety of the trial court's refusal to grant a new trial on the basis of the admission of impeaching evidence. Appellants contend that the court should have excluded the testimony of an F.B.I. Agent which was admitted to show that Green had made a prior statement inconsistent with his trial testimony. The Government sought to discredit Green's testimony that he saw Wheeler pay $30 to Jackson by showing that Green had previously told the Agent that he did not see any money change hands between Wheeler and Jackson. The argument for exclusion is that the procedural safeguards set forth in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, are applicable to any custodial statement, inculpatory or exculpatory, no matter how it is used at trial; that the testimony of the Agent was based upon a statement made by Green while under custodial interrogation; and that the Government failed to lay a proper foundation for admission of Green's statement by showing that at the time it was made Green had been fully advised of all of his rights and had voluntarily and understandingly waived them.

■ It is generally accepted that after a proper foundation has been laid,

a witness' testimony may be discredited by showing former inconsistent or contradictory statements, and the jury is entitled to consider such inconsistent statements in determining the weight to be given to the witness' testimony. But, it is universally maintained that unless such inconsistencies qualify as admissions, they have no substantive or independent testimonial value and cannot be used to establish the existence of a fact in dispute. Brooks v. United States, 10 Cir., 309 F.2d 280; N.L.R.B. v. Quest-Shon Mark B. Co., 2 Cir., 185 F.2d 285; and see J. C. Penny Co. v. N.L.R.B., 10 Cir., 384 F.2d 479. Admissibility is necessarily restricted to impeachment. See Asaro v. Parisi, 1 Cir., 297 F.2d 859; Bridges v. Wixon, 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103. While it is true that the court in Miranda was concerned with the admissibility of custodial statements as substantive proof of the facts related, we think the procedural safeguards prescribed there are equally important to a consideration of the admissibility of prior inconsistent statements for impeachment purposes. If the veracity of an accused person testifying in his own behalf is to be attacked by a prior inconsistent or contradictory statement made while he was under in custody interrogation, we think it is reasonable to require the Government to meet the burden of showing that the statement was voluntarily made after the accused had been fully advised of all of his rights and had effectively waived them in accordance with the standards prescribed by Miranda. To hold otherwise would permit an unconstitutional invasion of an individual's rights to be used as a weapon to influence the jury's consideration of his trial testimony. We consider then the purported warning and waiver.

After Green testified during the trial, the Agent was called to the stand and testified that "I advised Mr. Green that he didn't have to talk to me, that anything he said was voluntary, that he could have an attorney before he talked with me and also advised him that the Court would appoint an attorney for him if he could not afford an attorney. * * * I advised him that anything he said could be used in court against him. * * * ". The Agent was then asked, "Did Mr. Green indicate that he was willing to talk to you after you advised him of his rights?", to which he replied, "Yes". Green made no attempt to refute this testimony in any way.

■■ We have declined to formulate or indulge any ritual of words to determine whether an accused has been adequately warned of all of his constitutional rights and having been so informed effectively waived them. We have, however, repeatedly emphasized the necessity to observe the requirements of Rule 5(a) F.R.Cr.P., the manifest purpose of which is to avoid situations like this by taking an accused person before a magistrate without unnecessary delay where he is advised of his constitutional rights by a judicial officer instead of an enforcement officer before making an incriminating statement. See Coyote v. United States, 10 Cir., 380 F.2d 305, filed June 23, 1967. But, as in Coyote, no objection is made here to the admissibility of this statement for failure to observe the requirements of Rule 5(a). We consider the admissibility of the impeaching statement then on the basis of its voluntariness determined by the questions put to the accused by the enforcement officer and his answers thereto. So judged and considering the age, background and intelligence of the individual being interrogated, we think the testimony was competent for the purposes for which it was admitted.

■■ Appellants lastly contend that the case should have been transferred and tried in the Southern District of California. It is argued that California has far greater significant contacts with the case; that Kansas' only contact is the situs of the arrest and the residence of two prosecution witnesses; and that appellants were greatly handicapped in assisting counsel in locating witnesses in California in preparation of their defenses. The short answer is that a

change of venue rests within the sound discretion of the trial court and will not be disturbed absent clear abuse of that discretion. Kersten v. United States, 10 Cir., 161 F.2d 337. We find no such abuse here.

This brings us to Wheeler's allegation of newly discovered evidence. At the hearing on the motion for new trial, counsel for Wheeler put Green on the witness stand and elicited that early on the day appellants obtained the Ford automobile from Jackson, Green alone had "seen" Jackson and had "a little conversation with him"; that Jackson told Green that "he had [the car] a couple of nights before, but he did mention it was stolen", but that Green "didn't pay no attention to it because [Jackson] was drunk". Green further testified that Wheeler did not know of this meeting and conversation and that "the first time * * * Wheeler had any knowledge of any possibility that the car might have been stolen was * * * after the conviction" when the appellants were in jail and discussed the case. The trial judge could not agree with counsel that this " * * * is considered newly discovered evidence since [Green] was arrested"—nor can we.

■ A motion for new trial upon the ground of newly discovered evidence is not viewed with favor, and the granting of such a motion lies within the cautious discretion of the trial court, subject, of course, to review for abuse. Casias v. United States, 10 Cir., 350 F.2d 317; Robinson v. United States, 10 Cir., 345 F.2d 1007; Wion v. United States, 10 Cir., 337 F.2d 230; Long v. United States, 10 Cir., 139 F.2d 652. It is too well settled for discussion that a new trial is not warranted by evidence which, with reasonable diligence, could have been discovered and produced at the trial. See Grant County Deposit Bank v. Greene, 6 Cir., 200 F.2d 835 and authorities there cited; Titcomb v. Norton Company, 2 Cir., 307 F.2d 253; Wright v. United States, 9 Cir., 353 F.2d 362. Green testified in the trial and ample op-

portunity was afforded to produce the evidence upon which Wheeler seeks a new trial. Clearly there was no abuse of discretion in denying the motion, and we affirm the trial court's ruling.

Affirmed.