**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alfred David SCOTT,
Defendant-Appellant.**

**No. 77-1875.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Aug. 9, 1978.

Decided Feb. 20, 1979.

Jerome F. Statkus, of Carmichael & Statkus, Cheyenne, Wyo., for defendant-appellant.

Sharon A. Lyman, Asst. U. S. Atty., Cheyenne, Wyo. (Charles E. Graves, U. S. Atty., Cheyenne, Wyo., with her on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal from a conviction of Alfred David Scott by jury on a charge that he "did embezzle, steal, take and carry away from a motor truck" chattels which were a part of an interstate shipment, in violation of 18 U.S.C. § 659.

The issues on appeal are:

(1) Must the government affirmatively demonstrate that a defendant's prior statement was voluntarily made, before it can be used in cross-examining the defendant when he takes the stand;

(2) Was there reversible error in the government's cross-examination of defendant about his prior convictions; and

(3) Was there prejudicial error because the jury was instructed on "stealing" as well as embezzlement.

We recite only such of the facts as are relevant to the issues involved on the appeal. The evidence for the prosecution was that Scott was employed as an independent trucker to haul a load of potatoes from Bakersfield, California, to Decatur, Michigan. The shipper and owner was Guimarra Farms, which produced the potatoes. Scott was hired by a broker, Gotz, who arranged the load and advanced Scott $500 traveling expenses and paid for approximately $1,100 of truck repairs after the trailer had been loaded with potatoes. Scott was to deliver the goods to the purchaser in Michigan, who was to pay $2,595 for the potatoes, plus shipping charges. En route the entire load was sold by Scott to a store in Rock Springs, Wyoming, for $1,500. The store manager was told that Scott was the owner and was selling the potatoes since they were in danger of spoiling because of a refrigeration breakdown and motor trouble with the truck. Scott cashed the $1,500 check made payable to him, abandoned the truck, never accounted for the proceeds, and was arrested sometime later after he had taken a job in Texas.

Scott's testimony was that he thought the potatoes were owned by Gotz, the broker; that he paid $2,200 to Gotz to reimburse him for the repairs made to the truck and to purchase one-half interest in the potatoes. He said that he sold the potatoes, after receiving permission from the broker, to prevent spoilage because the truck's refrigeration unit was malfunctioning. Scott admitted cashing the check received from the Wyoming food center and retaining part of the proceeds, but claimed that he turned over a portion of the $1,500 to a law officer in Kansas to be returned to the Wyoming store when he found out there was concern over his actions.

I

After Scott was arrested and in custody FBI agents questioned him about the events surrounding the sale of the potatoes. The agents made a transcript of the conversation but Scott never signed the statement nor verified its accuracy. The defendant's statement was not used in the prosecution's case-in-chief, but after Scott took the stand the government cross-examination relied on portions of the prior statement to impugn Scott's credibility. It is contended that the government had the responsibility to show the prior statement was voluntary before it could use it for any purpose, relying on *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Wheeler v. United States*, 382 F.2d 998 (10th Cir. 1967). *Miranda*, of course, requires police to give positive warnings informing the accused of his or her constitutional rights prior to interrogation, and declares the prosecution must demonstrate that such warnings were given before the statement or confession may be used as evidence. Our decision in *Wheeler* dealt specifically with use of such a statement for impeachment purposes, and we declared that "it is reasonable to require the Government to meet the burden of showing that the statement was voluntarily made after the accused had been fully advised of all of his rights and had effectively waived them in accordance with the standards prescribed by *Miranda*." 382 F.2d at 1001. The *Wheeler* case supports the appellant's position, but in this aspect must no longer be regarded as controlling. This case is controlled by *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), which ruled that prior statements of a defendant made in custody may be used in cross-examination for impeachment purposes, even if they do not satisfy *Miranda* standards.

Appellant focuses on the language in *Harris* which sates that the evidence is usable "provided of course that the trustworthiness of the evidence satisfies legal standards." 401 U.S. at 224, 91 S.Ct. at 645. His argument is that this requires an affirmative showing, before use, that the

statement was made voluntarily and, therefore, was trustworthy. We do not agree. In *Harris* there is no indication such a foundation was laid. The court merely says, "Petitioner makes no claim that the statements made to the police were coerced or involuntary." 401 U.S. at 224, 91 S.Ct. at 645; *Oregon v. Hass,* 420 U.S. 714, 722, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), which reaffirmed and extended *Harris,* made essentially the same statement concerning a prior statement of a defendant used for impeachment, that there was "no evidence or suggestion that Hass' statements . . were involuntary or coerced." It then went on to say:

> If, in a given case, the officer's conduct amounts to an abuse, that case, like those involving coercion or duress, may be taken care of when it arises measured by the traditional standards for evaluating voluntariness or trustworthiness."

420 U.S. at 723, 95 S.Ct. at 1221.

In the case at bar there is no evidence that the statement was coerced or that there were any violations of *Miranda.* The statement itself expressly recites that appropriate warnings were given before interrogation. Defense counsel was given the prior statement before trial. There was no pretrial motion to suppress, only the contention when the statement was utilized that the government had to affirmatively demonstrate that the statement was voluntary, and that defendant had told his counsel "he wasn't aware of what they were talking about to him when he made that statement."

■ This is not *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) or *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). If voluntariness is questioned, the Court has the constitutional duty to make a factual determination. If the Court finds by at least a preponderance of the evidence that the statement was voluntary it may be used. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). But in the absence of either an allegation or indication of coercion, duress or involuntariness we are not

going to require the government, as a precondition to use of defendant's own statement to cross-examine him, to bring in the FBI agent who took the statement to testify affirmatively that there was no coercion and that the statement was voluntarily given. *Cf. La France v. Bohlinger,* 499 F.2d 29 (1st Cir. 1974).

## II

Appellant also argues that the court committed prejudicial error in allowing the government to cross-examine Scott about prior felony convictions. Fed.R.Evid. 609(a) permit use of prior felony convictions for impeachment during cross-examination "if elicited from him or established by public record." Rule 609(b) forbids use of prior convictions more than ten years from the date of the conviction or release from confinement.

In the instant case the prosecuting attorney asked Scott the general question whether he had ever been convicted of a felony. Scott answered that he had been convicted under the Dyer Act in 1966, more than ten years prior to the trial. The prosecutor then asked if he had been convicted of a felony in 1969, which defendant denied. The prosecution went no further and let the matter stand; no other evidence was presented concerning convictions.

We consider it important that Scott's criminal record was the subject of discussion prior to his taking the stand. The FBI rap sheet was given to defendant before trial; it showed several arrests and what appeared to be convictions, including one for a felony in 1969, within ten years of the trial. The trial judge had indicated prior to Scott's testimony, that he would permit inquiry about convictions within the past ten years. The prosecution had declared, in the presence of the defense counsel, that he was going to ask the general question which he did use.

■ Defendant's answer was a voluntary response to a general question. His counsel should have informed him that the question would be asked, and the necessary response

was limited to the past ten years. Under the circumstances we do not consider the answer by defendant that he was convicted in 1966, to constitute reversible error. To hold otherwise, we believe, would provide too easy means for a defendant to inject error into a case.

■ With respect to the 1969 conviction it is argued that the prosecution was required to have a certified copy of the conviction before making the inquiry. Rule 609(a) clearly contemplates two methods of establishing prior convictions on impeachments: the witness's own answer to questions and the public record. If the question about a 1969 conviction had been simply a shot in the dark, where the prosecutor had no basis to believe such a conviction existed, that would be another case. But the FBI "rap sheet" showed such a conviction. Although the "rap sheet" is not admissible as public record of the conviction, we have long held use of that record to cross-examine upon prior convictions is proper conduct. *Darby v. United States,* 283 F.2d 896 (10th Cir. 1960).

### III

■ Appellant's final argument is the trial court committed error when it instructed the jury on the elements of stealing and embezzlement when the evidence only supports a charge on embezzlement. Counsel made various pretrial and during trial arguments that the words "steal" and "carry and take away" should be struck from the information because there was no evidence to support those crimes.

Scott was charged under 18 U.S.C. § 659, which reads in part as follows:

Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains . . . with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight . .

Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; . . .

■ The court instructed the jury on the elements of stealing as follows:

You are further instructed that the word "steal" as used in the statute is not used in a technical sense of what constitutes larceny, but in its well-known and accepted meaning of taking the personal property of another for one's own use without right or benefit of law, and that such taking can exist whenever the intent to do so comes into existence and is deliberately carried out regardless of how the party so taking the property may have originally come into possession of it.

The government pointed out the instructions should also include embezzlement and the court agreed, instructing the jury as follows:

To embezzle means to fraudulently appropriate to one's own use or benefit property or money by a person to whom such property or money has been entrusted or into whose hands it has lawfully come.

The court quite properly based its refusal to eliminate the reference to "steal" and justified its instruction concerning that term upon *United States v. Turley,* 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957). While that case involved the Dyer Act it clearly set out the view that federal statutes of the type exemplified by 18 U.S.C. § 659 are not to be construed to employ the common law and old state decision distinctions between larceny and embezzlement. Rather such terms as "stolen" include all felonious takings with intent to deprive the owner of his rights and title. The same approach has been taken to interpretation of 18 U.S.C. § 659. *See United States v. Petti,* 459 F.2d 294 (3d Cir. 1972); *United States v. Waronek,* 582 F.2d 1158 (7th Cir. 1978).

We find no error in either the instructions or the refusal of the trial judge to strike portions of the information.

For the reasons stated the judgment is AFFIRMED.