**Rubie Charles JENKINS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 8284.

United States Court of Appeals
Tenth Circuit.

May 26, 1966.

Roger W. Redman, Aurora, Colo., for appellant.

James R. Ward, Asst. U. S. Atty. (Newell A. George, U. S. Atty., and Guy L. Goodwin, Asst. U. S. Atty., on the brief), for appellee.

Before PICKETT, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

Appellant, Rubie Charles Jenkins, in a jury trial, was tried and convicted upon an indictment charging three offenses: (1) The unlawful entry into a Federally insured bank with the intent to commit a larceny, (2) theft of property valued in excess of $100.00 from that bank, and (3) receiving and possessing property knowing it to have been stolen from such bank.[1] This is a direct appeal from those convictions and the sentences imposed pursuant thereto.

Appellant's contentions may be fairly summarized as involving: (1) The improper submission of all three counts of the indictment to the jury, (2) illegal search and seizure, (3) insufficiency of the evidence, and (4) prejudicial statements by the government counsel in the presence of the jury.

On or about March 23, 1961, the Fowler State Bank of Fowler, Kansas, was burglarized. The bank vault door was opened and the safety deposit boxes inside were rifled. About $17,000 was taken, most of it from these safety deposit boxes. One of the boxes was rented to a man by the name of Donald Downing, who had for some years been a coin collector and kept his collection in this box. Downing kept a detailed record of all of his coins showing the type, date, and mint mark of each coin, which record shows that most of the coins were rare. They were placed in plastic coin cases before being put into the safety deposit box.

On September 25, 1961, several F.B.I. agents, after receiving notice that a warrant for the arrest of Jenkins had been issued after the return of an indictment in the District of South Dakota, went to an apartment in Tulsa, Oklahoma, to attempt to make the arrest. The agents found Jenkins and his wife in the apartment and, after making the arrest, proceeded to search the apartment. By the search, the agents found an oxygen acetylene tank and hose, a Remington shotgun with a sawed-off stock, an eight-pound sledge hammer, a sixteen-pound sledge hammer, .45 caliber ammunition, a grinder, an electric drill, a wrecking bar, a Louisiana auto license tag, two chisels, one punch, three drill bits, cutting tips for welding, three loaded pistols, a rifle, two pairs of leather gloves and a large number of coins together with some plastic coin cases. The coins were found in a pillowcase and two shoe boxes.

Appellant has one meritorious contention here which we will consider first. As noted above, the indictment charged three separate offenses under the Federal Bank Robbery Act, Title 18, U.S.C. § 2113(a), (b) and (c). By the instructions given to the jury, they were told that they could find Jenkins guilty of any one or more of the three crimes charged. This constituted such error as requires a reversal of the judgment and conviction and the granting of a new trial. Since the trial of this case this court has had this precise question before it. In Glass v. United States, 10 Cir., 351 F.2d 678, on the authority of Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773, we held that

---

1. 18 U.S.C. § 2113(a), (b) and (c).

"a thief cannot be guilty of bank robbery and also the crime of receiving property which was stolen" and the failure of a trial judge to instruct the jury that the accused could be convicted of only one of such separately charged offenses compels a reversal of a conviction on both counts.

Our remand of the case for a new trial requires consideration of other points raised by appellant. He first complains about the application in this case of the doctrine of "possession of recently stolen property" and the inferences flowing therefrom. More specifically, he questions the sufficiency of the evidence to show either that the property was "recently stolen" or that he had possession of such property. As pointed out above, there was a lapse of time from March 23, 1961, the date of the burglary, to September 25, 1961, the date of the arrest and search. Appellant urges that this lapse of time precludes the application of the doctrine and the admission into evidence of the various items seized in the search. From the record, it is evident that the government's case on each of the counts charged must stand or fall on this evidence. We believe the trial judge correctly received these seized items into evidence.

■ There can be no doubt that the commission of a crime may be established by circumstantial evidence.[2] One such example of this is in the application of the well recognized rule that unexplained possession of recently stolen property is circumstantial evidence of participation in the theft.[3] We should point out at this juncture that the court's instructions on this point were insufficient in that they failed to advise the jury that such possession may give rise to an inference that the possessor stole the property. The instruction given stated that such possession "is a circumstance from which the jury may reasonably draw the inference and find that the person knew the property had been stolen." This is correct but the jury should have been advised also of the stronger inference that may be drawn from evidence of possession of recently stolen property. In utilizing these inferences that arise from such possession, the key consideration must be centered around proof that the possession was exclusive and that the property was recently stolen.[4] While the cases applying this rule of evidence are legion, they must each be viewed in light of their own particular factual setting for in the final analysis, the decision is one for the jury to decide under appropriate instructions.[5] In any case, before the inference may be made from possession of stolen property alone, there must be proof of an unlawful taking coupled with convincing identification of the property stolen.

■ In this case, there is no question about an unlawful entry into the bank and a larceny of money, including a large amount of coins, some of which consisted of a coin collection of which the owner kept a detailed record showing the type, denomination, year and any other distinguishing marks of each coin. The proof of identification of the coins from the collection is close to positive. In the collection were Indian head pennies dated 1848, 1868, 1881, 1883, 1884, 1887, 1889, 1894, 1895, 1896, 1898 and 1900; 84 Liberty nickels; 4 Canadian half dollars; 12 Canadian quarters; 22 Canadian dimes; 11 Canadian nickels, 38 silver dollars; 93 half dollars; 160 Indian head pennies; 323 dimes, 232 buffalo and Jefferson nickels; 194 quarters;

2. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; Real v. United States, 10 Cir., 326 F.2d 441.

3. Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; Real v. United States, supra, note 2. See also Vol. 1, Wharton's Criminal Evidence

(12th Edition, 1955), § 135; 52 C.J.S. Larceny § 105 et seq.

4. See Wharton's Criminal Evidence, supra, note 3; and see the cases collected in 52 C.J.S. Larceny §§ 106 and 107.

5. See Boehm v. United States, 2 Cir., 271 F. 454, and 52 C.J.S. Larceny § 108.

a Flying Eagle penny dated 1857,[6] and proof sets of coins for the years 1957, 1958, 1959 and 1960. Identical coins in numbers, mint dates, types and mint marks were found in the apartment occupied by Jenkins.

The trial judge, by correct instructions, left to the jury the questions of whether the property was recently stolen and was in the possession of Jenkins when seized. As the judge told the jury, the term "recently stolen" is a relative one. The nature of the property here, a large collection of rare coins, valued at much more than its face value, could not be safely sold for its worth immediately after the theft without the thief and collection being identified. Such articles would naturally be secreted for a period of time. Considering all of the facts and circumstances of the case the jury, as it did, could determine that the property was recently stolen.

Finally, there can be little doubt that the appellant had exclusive possession of the stolen property. The items were located in an apartment occupied by the appellant and his wife. The apartment was owned by appellant's cousin who told two different stories. First, he said the apartment was leased to a man named Johnson who was introduced to him by appellant and he produced a record actually showing Johnson as the tenant. On further examination however he admitted appellant's name was originally shown as lessee and that he altered the records after being interviewed by the F.B.I. to show Johnson as the tenant. Witness Spears testified to meeting appellant in this apartment and having coffee with him there. An F.B.I. agent testified that during the search appellant was asked "where he got the television set" and replied that it was in there when he got the apartment. The evidence of the agents making the search shows that at that time appellant made no claim that

he was not in possession of the apartment or that any of the property seized did not belong to him. Further, when the agents asked Jenkins about the coins he told them that the coins were for the education of his children and obtained as a result of emptying his pockets at night. In view of the amount of money represented by the coins and their type, we do not believe this to be a plausible explanation. Accordingly, we believe there was ample evidence for the court to submit to the jury the question of ownership or possession of the articles seized during the search and for the admission into evidence of such seized articles.[7]

Appellant also urges error in the admission into evidence of the items found in the apartment and characterized as burglary tools. There is no merit to this point. The evidence showing how the bank was entered and the means employed to get into the vault and the safety deposit boxes makes many of those items admissible. In addition, the defense evidence disclosed a search of Jenkins' car and the seizure of many other items classified as burglary tools. We cannot see the reason for the introduction of these items by the defense. Such action on the part of the defense certainly diluted appellant's allegation of prejudice because of the introduction by the government of other similar items.

Little need be said about appellant's contention that the search of the apartment was illegal. As recited above, Jenkins had been indicted in the United States District Court for the District of South Dakota for bank robbery and notice was given to the agents that a warrant for his arrest was outstanding. The agents who arrested Jenkins in the Tulsa apartment with notice of the warrant outstanding, made the arrest and were within legal bounds when they searched the apartment.

On several occasions during the course of the trial, counsel for Jenkins moved

---

6. Downing made a positive identification of this coin because of the chemistry experiments he had performed with it and which reduced the coin in thickness and changed its character.

7. See generally, 52 C.J.S. Larceny § 107.

the court for a mistrial because of statements made by government counsel. In this connection we have carefully reviewed the trial record and find no instance where we believe the court erred in not granting a mistrial.

From our careful consideration of the entire record and from what has been said heretofore, we believe that there was sufficient evidence to submit count one as well as counts two and three of the indictment to the jury. Our reversal of the case as to counts two and three compels us to remand the entire case for a new trial because we cannot speculate as to the sentencing consequences that followed the conviction of appellant on each of the three counts. We note that concurrent ten year sentences were imposed and we cannot say with certainty that the trial judge would have imposed a ten year sentence if the conviction would have been had on only one count or that concurrent ten year sentences would have been imposed if the conviction would have been on two counts. Nor can we say that Jenkins, with two concurrent sentences imposed upon him would not suffer prejudice when his case is given consideration for parole.

The judgments and sentences are reversed and the case is remanded for a new trial.