**UNITED STATES of America, Plaintiff and Appellee,**

v.

**William WASHABAUGH, Jr., Appellant.**

**UNITED STATES of America, Plaintiff and Appellee,**

v.

**William David WENTROBLE, Appellant.**

**Nos. 25971, 26101.**

United States Court of Appeals, Ninth Circuit.

April 28, 1971.

Rehearing Denied in No. 26101 June 4, 1971.

Rehearing Denied in No. 25971 June 29, 1971.

Volney V. Brown, Jr. (argued), Beverly Hills, Cal., for William Washabaugh, Jr.

Jeremiah Casselman (argued), Beverly Hills, Cal., for William David Wentroble.

Darrell W. MacIntyre (argued), Asst. U. S. Atty., David R. Nissen, Chief, Criminal Division, Robert L. Meyer, U. S. Atty., Los Angeles, Cal., for plaintiff and appellee.

Before CHAMBERS, WRIGHT and TRASK, Circuit Judges.

CHAMBERS, Circuit Judge:

Washabaugh, Wentroble, Pringle and Warner, state prisoners at Huntingdon, Pennsylvania, escaped on July 8, 1969. They needed a car for transportation. Warner alone provided it by stealing one. Then he picked up Washabaugh, Wentroble and Pringle. Off they drove to California, arriving four days later. In California they became associated with one Piert.

In an indictment in the Central District of California the three were charged with a Dyer Act violation.

There were other counts as follows:

Count two: Wentroble, unarmed bank robbery of Trans World Bank, San Fernando, California, July 24, 1969.

Count three: Washabaugh, robbery of Crocker-Citizens National Bank, Canoga Park, California, July 31, 1969.

Count four: Wentroble, armed "bank" robbery, Gibralter Savings and Loan Association, Panama City, California, July 31, 1969.

Count five: William Piert and Washabaugh, robbery of First Western Bank, Glendale, California, August 5, 1969. (The evidence is that Piert was the "stick-up" man and that Washabaugh drove the "getaway" car.)

Washabaugh and Wentroble were convicted by a jury of everything with which they were charged. (In this appeal, as it comes to this court, Piert, Pringle and Warner are not in it.)

Washabaugh was sentenced to five years on the Dyer Act count, and to fifteen years on each of the robbery counts. Wentroble received like sentences. Also, the sentences were concurrent. Thus, we need not necessarily find more than one robbery count good as to each defendant-appellant. See Benton v. Maryland (1969), 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707; Hirabayashi v. United States, (1943) 320 U.S. 81, 63 S. Ct. 1375, 87 L.Ed. 1774; United States v. Jack, 439 F.2d 879 (9th Cir., Feb. 24, 1971); United States v. McKinney, 433 F.2d 921 (9th Cir., Nov. 16, 1970).

We affirm both judgments of conviction. However, we commend both counsel for the splendid representation they have rendered by appointment to their clients.

■ After most of the evidence was in, Pringle changed his plea in the Dyer Act count to guilty. The trial judge heard the plea in chambers and, when the trial resumed, informed the jury of Pringle's plea and strongly admonished the members not to consider it with respect to Washabaugh and Wentroble. Since all three defendants were charged with the same crime in the same count and had sought to escape conviction on the same ground (lack of knowledge that the car was stolen), Washabaugh and Wentroble insist that this information would necessarily lead the jury to find them guilty as well. Informing the jury that such pleas have been entered is not ordinarily erroneous where, as here, the statement is unadorned and accurate, and the jury is carefully instructed not to consider the plea in determining the guilt or innocence of the remaining defendants. United States v. Jones (9th Cir. 1970), 425 F.2d 1048.

However, given the close identification of the defendants with one another in the Dyer Act count and the lateness

in the trial, it might have been better simply to tell the jury that Pringle was to be considered no longer a defendant in the case and that his guilt or innocence should play no part in future deliberations.

The jury could rationally draw an affirmative inference of knowledge that the car was stolen from the improbability of the defendants' story and their demeanor on the witness stand when they denied knowing the car was stolen.

■ The evidence upon which Wentroble was convicted of the count two robbery consisted of testimony of two tellers, eye-witnesses, who positively identified him as the hold-up man, and of an FBI fingerprint expert who was of the opinion that a fingerprint lifted from the bank's glass door shortly after the robbery was Wentroble's. The count four conviction likewise was sustained by strong eye-witness testimony. Nevertheless, Wentroble urges reversal because he was not permitted prior to trial to examine the Jencks Act statements of government witnesses. Under the Jencks Act (18 U.S.C. § 3500), the government is not required to produce the statements until the witness has taken the stand. This the government did. And the record shows that counsel was not denied time to read the statements before beginning cross-examination. Contrary to Wentroble's position, we think that the Jencks Act, as applied here, violates neither his right to due process nor his sixth amendment rights to effective assistance of counsel and cross examination. See Palermo v. United States (1959), 360 U.S. 343, 353 n. 11, 79 S.Ct. 1217, 3 L.Ed.2d 1287. Conviction of Wentroble is affirmed on all counts in which he was accused.

■■ Washabaugh was convicted of the count three robbery almost solely on the testimony of an eye-witness, teller Patricia Jones Quinn. After the robbery, but before Washabaugh was arrested, she was shown 35–50 pictures to aid the FBI in capturing the suspects. She was not able to identify any of

them. Shortly after Washabaugh's arrest, she was shown a group of ten photographs, one of which was of Washabaugh. From this group she identified Washabaugh as the robber. The night preceding the trial she again picked Washabaugh's photograph from a group of ten. At neither of these post-arrest showings was Washabaugh's counsel present. Quinn testified that at no time was a photograph suggested to her. It does not appear from the record that the procedure by which the photographs were shown to her was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" (Simmons v. United States (1968), 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L.Ed.2d 1247); accordingly, this conviction need not be set aside. Moreover, in this circuit presence of defense counsel at an out-of-court photographic identification is not required, regardless of whether the accused is in custody or not. Allen v. Rhay (9th Cir. 1970), 431 F.2d 1160, 1167.

■ With respect to count five, Washabaugh strenuously urges that the trial judge committed reversible error in refusing to authorize funds to pay an investigator to search for a missing alibi witness. Pursuant to 18 U.S.C. § 3006A(e), he requested $200 for services and $50 for expenses; the trial judge authorized $100 for services and $25 for expenses. Washabaugh insisted, and a Mrs. Graves testified, that at the time of the robbery he was driving Maxine Piert to the beauty parlor. Maxine was not located for trial. Washabaugh's attorney was adamant that additional funds were necessary, but made only a token effort to show how additional funds would bring in the missing Maxine where the $125 had failed. Moreover, Cheryl Piert and Alice Piert, codefendant Piert's sister and mother, (see RT 726, 904) each testified that although she could not remember Maxine's address, each could lead an investigator there. If requested to do so, the trial court had power to subpoena Maxine and

to order these witnesses to accompany a marshal to her place of residence; but counsel chose not to avail himself of the trial court's subpoena power. If prejudice has occurred to Washabaugh on account of the judge's failure to authorize additional funds, he must so establish by clear and convincing evidence. Christian v. United States (10th Cir., 1968), 398 F.2d 517. He has not sustained this burden.

■ Shortly after the defendants were arrested, FBI agent Schlatter interviewed government witness Claire Miller, Washabaugh's girl friend. He reduced the interview notes to statements (unsigned by Miller) in which Miller allegedly told him that Washabaugh had told her, in effect, that he had driven the getaway car in a bank robbery that resulted in "loot" of about $5,000. In a colloquy outside the presence of the jury immediately preceding direct examination by the government, the trial judge established that Miller did not remember making statements to that effect. Nevertheless, the government was permitted, over defense objections, to question her about the statements in the presence of the jury. And further, agent Schlatter was put on the stand to give the substance of the statements. The prior inconsistent statements were admissible to impeach Miller (Benson v. United States (9th Cir. 1968), 402 F.2d 576), but Washabaugh was entitled to limiting instructions, which were not given (nor were they requested).

The evidence connecting Washabaugh to the count five robbery consisted only of this impeachment hearsay and the fact that bait money from the bank was found in his possession when he was arrested. Since stickup man Piert and Washabaugh lived together, Washabaugh might have come by the bait money innocently. During its deliberation the jury sent the judge a note regarding count five reading: "What implicated Wm. Washabaugh. Pamela Ann Malfer identifies only Fred Piert?" The judge wrote in response: "The jury

must look to any testimony or other evidence that may have tended to connect Washabaugh with the robbery in count 5 and give to it such weight as you feel it is entitled."

This answer permitted the jury to look to the highly prejudicial impeachment hearsay as substantive evidence. The jury note indicated jury unease about the quantum of evidence that had been adduced as to Washabaugh on count five. The admission of Schlatter's testimony was error, and in view of the jury's inquiry cannot be found harmless.

We affirm Washabaugh's convictions on counts one and three, but if within four weeks he should move for a new trial on count five, the motion should be granted unless the government dismisses the count.

Here we have chosen to review all of the counts upon which convictions were secured, the concurrent sentence doctrine notwithstanding, in view of Benton v. Maryland, *supra*. In the absence of such a motion, the fifth count will stand affirmed.

Hastie, Chief Judge, concurred and filed opinion.