**UNITED STATES of America, Appellee,**

v.

**Elmer Patrick SHARPE, Defendant, Appellant.**

No. 71–1219.

United States Court of Appeals, First Circuit.

Dec. 27, 1971.

Alfred Paul Farese, Everett, Mass., for appellant.

Lawrence P. Cohen, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, BREITENSTEIN, Senior Circuit Judge,* and McENTEE, Circuit Judge.

McENTEE, Circuit Judge.

Defendant appeals from his conviction for receiving and possessing certain goods stolen from an interstate railroad shipment in violation of 18 U.S.C. § 659.

Between 11 p.m. and midnight on February 25, 1970, a freight train en route to South Boston made an emergency stop in Walpole, Massachusetts, and remained there for about an hour. During that period twenty-five television sets were taken from a railroad car which contained a shipment from the R. C.A. plant in Memphis, Tennessee, to Westwood, Massachusetts. About 12:45 a.m. on February 26, Officer Honohan of the Walpole Police came upon the defendant and two companions in the center of Walpole. He offered them a ride which they accepted. At approximately 7:30 on the same morning a U-Haul truck, which the defendant had rented in Boston on the previous afternoon, was discovered "hung up"[1] on an embank-

ment adjacent to the railroad tracks in a desolate, out-of-the-way area of Walpole. This was less than a mile from the spot where Officer Honohan had picked up the defendant and his two companions several hours earlier. The truck was discovered by an employee of the town who opened the rear door and saw that it contained cartons of television sets, a pinch bar and a large set of bolt cutters. He had the local police summoned, and a Sergeant Driscoll responded. When Driscoll arrived, he was told that the truck was loaded with television sets. He then opened the back door of the truck and conducted a search of its contents. At trial the government established that the television sets found in the U-Haul truck were the ones taken from the freight train.

 On appeal the defendant assigns eight errors, at least four of which border on the frivolous and merit only brief mention here. First, defendant objects to Officer Honohan's testimony that one of the defendant's companions was wearing an "engineer's hat, like a railroad hat" on the morning of the 26th. This testimony was clearly relevant and admissible. Next, defendant claims he should have been permitted to cross-examine Honohan about his investigations of the defendant's companions in order to establish that neither of defendant's two companions had been arrested. The district court properly sustained a government objection to this line of questions. Since defendant made no offer to prove that Honohan's alleged failure to conduct an investigation could not as plausibly be accounted for by lack of authority to investigate, or by a discretionary decision not to prosecute, defendant's inquiry had no relevancy to any issue before the court. Defendant also complains of an allegedly unresponsive and prejudicial answer by Honohan.[2] Out of an abundance of cau-

---

* Of the Tenth Circuit, sitting by designation.

1. The back of the truck was facing the railroad tracks and its underbody was resting on the embankment in such a manner that its rear wheels were not in contact with the ground.

2. "Q. [Mr. Farese]. So that was way in May of 1970. At any time in May of 1970 did you give Special Agent Link any

tion this response was stricken by the court. It was not so prejudicial as to warrant a mistrial. Fourth, defendant claims reversible error by the court's instruction on the permissible inference of guilt from flight. However, immediately after this instruction was given it was withdrawn in the most emphatic terms.[3] To argue that the withdrawal was without effect is to assume that a jury will follow instructions that may prejudice a defendant but ignore all others. This assumption is contrary to logic, law, and common sense.

■■ Defendant urges reversal for failure to instruct the jury that if it believed he stole the goods, it could not convict him of receiving them, citing Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961). His argument, however, ignores the trial court's instruction to the jury, which defendant does not now challenge, that receipt in the traditional sense is not an essential element of a violation of 18 U.

S.C. § 659, and that it could convict the defendant, under the indictment, of "receiv[ing], or [having] in his possession" stolen property if it found simply that he had knowingly possessed stolen goods.[4] Thus any possible inconsistency between theft and receipt is irrelevant here. Moreover, there is nothing inconsistent in being involved in the theft and being guilty of possession of stolen goods. Since the defendant was not indicted for theft and was convicted only of possession, we need not reach the more difficult question of whether convicting a person of both theft and possession would be impermissible because it would result in pyramiding penalties for a single act.[5]

■ Next defendant claims he was prejudiced by the prosecutor's inadvertent failure to turn over two of the five pages of the Jencks Act material with reference to Officer Honohan's prior statements.[6] However, defendant has

---

identifications of what the people were wearing, or even how tall they were?
 "A. [Officer Honohan]. [No response.]
 "Q. Did you?
 "A. Do you want me to answer the question?
 "Q. What did you think I am asking you for?
 "A. They showed me pictures that day."

3. "THE COURT: As a result of the conference at the side bar, the Court has one amendment and correction of its instructions. The Court misconstrued the evidence in instructing the jury with respect to an inference that might be derived from a defendant fleeing from the scene of a crime. The evidence in his case was insufficient to support any inference by the jury by virtue of Mr. Sharp's having been fleeing when he was seen, according to the testimony of one of the witnesses, in Walpole at quarter to one or one o'clock on the night of the 26th of—or in the early morning hours of the 26th of February, 1970.
 "Therefore, the Court directs you to disregard the principle of law stated with respect to evidence of flight, and the Court strikes that portion of its instructions from the instructions as a whole. The evidence was to the effect that the de-

fendant was present walking in Walpole when first seen by the officer, according to his testimony, and there was, on reconsideration, no indication that the defendant was fleeing.
 "Therefore, the principle dealing with an inference permitted from evidence of flight is inapplicable to this case, and must not be employed by you jurors in deliberating and in reaching your verdict in this case. The fact that he was seen when and where he was is, of course, a circumstance in evidence in the case that may be considered by you, but not in terms of flight from the scene of a crime."

4. The court, in charging the jury, said, "Here the evidence certainly does not accord with that concept of receiving stolen goods. . . . Here the charge is having possession of these stolen goods, and it is that aspect of the case that you are to concentrate on."

5. Compare D'Argento v. United States, 353 F.2d 327, 334–35 (9th Cir. 1965), cert. denied, 384 U.S. 963, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1966), with Thomas v. United States, 418 F.2d 567 (5th Cir. 1969).

6. When Officer Honohan's direct testimony was completed, the defense demanded the Jencks Act, 18 U.S.C. § 3500, materials relating to his testimony. The Assistant

failed to substantiate his bald assertion of prejudice despite repeated requests to do so. Most of what is contained in the omitted Jencks Act statements was covered in Honohan's direct testimony. Defendant has failed to specify which questions on cross-examination he would not have asked had he been given all of Honohan's prior statements, and since there was no redirect the mere fact of cross-examination was not prejudicial. Nor did the defendant "suddenly" terminate his cross-examination of Honohan upon receipt of the missing material. In view of his failure to substantiate his allegation of prejudice and our inability to find any, we must conclude that there was none.

■ Defendant's next contention is that part of Honohan's testimony was inadmissible hearsay. Honohan testified that one of the defendant's companions told him that their car had broken down between Framingham and Walpole and that they had been walking for several hours. This statement was not offered for the truth of the matter asserted but rather to show the guilty mind of defendant's companion—that he was evasive or lying about the reason for his presence in Walpole in the wee hours of the morning. That the government did not offer this statement for its probative value is indicated by its offer of evidence tending to show that no abandoned automobile could be found between Walpole and Framingham. The

challenged testimony, admitted merely to show that the words were spoken, was not hearsay. See 6 Wigmore, Evidence §§ 1766, 1790 (3d ed. 1940); see, e. g., Pauling v. News Syndicate Co., 335 F.2d 659, 664 (2d Cir. 1964), cert. denied, 379 U.S. 968, 85 S.Ct. 662, 13 L.Ed.2d 561 (1965); Scholle v. Cuban-Venezuelan Oil Voting Trust, 285 F.2d 318, 321 (2d Cir. 1960); United States v. Mesarosh, 223 F.2d 449, 454 (3d Cir. 1955), rev'd on other grounds, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956).

Finally, we address ourselves to defendant's contention that the police search of the U-Haul truck violated the fourth amendment. The Supreme Court has discussed searches of motor vehicles in numerous cases [7] and has consistently held "that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize." Chambers v. Maroney, supra, note 7 at 48, 90 S.Ct. at 1979.

■ It is clear that in the instant case there was probable cause for Sergeant Driscoll's search of the truck, which was hung-up but by no means permanently immobile.[8] Driscoll found the truck near a railroad siding on a dead-end road [9] in an area where passing trains

---

United States Attorney handed over several pages which dealt with Honohan's identification of photographs and which gave a summary of his testimony. The two pages which were omitted contained a fuller account of the encounter between Honohan and the defendant on the morning of the 26th. During the cross-examination of Officer Honohan, the prosecution discovered its error and tendered the missing pages.

7. See, e. g., Chambers v. Maroney, 399 U. S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L. Ed.2d 538 (1968); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d

777 (1964); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938); Husty v. United States, 282 U. S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). See also Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968) (per curiam) which appears not to have been a search at all.

8. The truck was later removed with the aid of a tow-truck.

9. In Sergeant Driscoll's opinion there were only three possible uses for this road: (1) access to the town pumping station, (2) a lover's lane, and (3) a place to hijack trains.

must slow to five miles an hour and where previous hijackings had occurred. In addition, he had been told that the truck was loaded with television sets. Defendant's argument that this probable cause should have been the basis for a search warrant instead of a search was rejected in Chambers v. Maroney, *supra* note 7 at 52, 90 S.Ct. at 1981, where the Court said:

"For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

Affirmed.