**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George Alvin TYLER, Defendant-Appellant.**

**No. 71-2143.**

United States Court of Appeals, Ninth Circuit.

Aug. 22, 1972.

Certiorari Denied Dec. 4, 1972.

See 93 S.Ct. 544.

Richard L. Knickerbocker (argued), Torrance, Cal., for defendant-appellant.

John F. Walters, Asst. U. S. Atty. (argued), Eric A. Nobles, Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before DUNIWAY and KILKENNY, Circuit Judges and MURPHY,* District Judge.

MURPHY, District Judge.

Tyler appeals from a judgment of the District Court of the Central District of California convicting him, after a jury trial, of (1) larceny and (2) possession of $4,510 in Bank of America traveler's checks in violation of 18 U.S.C. § 2113(b) and (c). He received concurrent sentences of six years on each count.

The only issue[1] raised by appellant is whether all the traveler's checks, at the time they were stolen or possessed, could possibly have had a value of more than $100 as is required by § 2113(b) and 2113(c).[2] His submission is that the checks had no or only a nominal value. It is undisputed that at the time the Bank of America traveler's checks were stolen from that federally insured Bank they were neither signed nor countersigned but each had an imprinted denomination of $10, or $20, or $50 or $100 on its face.

We find the argument without merit. There was expert testimony as to the value of over $100 from two witnesses, thus creating a question of fact for the jury. There was additional evidence that defendant in fact cashed almost all of them, that is, $4,490 worth. Similar arguments have been advanced and rejected with regard to stolen blank postal money orders and also blank traveler's checks. United States v. Evans, 446 F.2d 998, 1001 (8th Cir. 1971); United States v. Carter, 448 F.2d 1245, 1247 (8th Cir. 1971); Churder v. United States, 387 F.2d 825, 833 (8th Cir. 1968); United States v. Kramer, 289 F. 2d 909, 920–921 (2d Cir. 1961).

Although appellant did not raise the issue before the District Court or in this Court, we commend the United States Attorney for calling to our attention an underlying important legal issue, *viz.*, did the conviction of appellant violate the so-called rule of Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), "that the trial judge erred in not charging that the jury could convict of either larceny or *receiving*, but not of both." (p. 555). (Emphasis added.)

The Government did attempt to have the trial court charge the *Milanovich* rule, but the court refused.[3] Counsel for Tyler, although he was furnished a copy of the Government's request and was present when the requested instruction was discussed, never asked for such an instruction and took no exception to the charge as given.

---

\* The Honorable Thomas F. Murphy, Senior District Judge, Southern District of New York, sitting by designation.

1. Appellant also briefed the alleged refusal of the trial court to give an instruction on the lesser included offense but did not press it on oral argument because the charge was in fact given.

2. "§ 2113. Bank robbery and incidental crimes.
    *      *      *      *      *      *
    "(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to * * * any bank * * * shall be fined not more than $5,000 or imprisoned not more than ten years, or both;
    *      *      *      *      *

"(c) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank * * * in violation of subsection (b) of this section shall be subject to the punishment provided by said subsection (b) for the taker."

3. The Government's Proposed Instruction reads:
    "I instruct you as a matter of law that you cannot convict the defendant of both offenses contained in Count One and Count Two. You may convict the defendant of the offense charged in Count One of Indictment or Count Two of Indictment. However, you may not convict the defendant of both of the offenses." (citing Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961).

Whether or no the crime of possession (as charged in Count 2) as distinguished from the crime of receiving, which was not charged in that count, takes it out of the rule of *Milanovich* is therefore our first concern, since we have held that failure so to charge in a larceny-receiving case is plain error whether requested or not. *Cf.*, United States v. O'Neil, 436 F.2d 571 (9th Cir. 1970); Keating v. United States, 413 F.2d 1028 (9th Cir. 1969).

We acknowledge the fact that *Milanovich*, although a 5–4 decision, is authority for the proposition that in any prosecution of a single wrongdoer for the crimes of larceny and receiving the same goods or money, the court must charge the jury that they may convict for either larceny or receiving but not both. We are not bound, however, by such a rule where the crimes charged under the Federal Bank Robbery Act are for larceny and possession (18 U.S.C. § 2113(b) and (c)) unless, of course, possession and receiving are synonymous.

*Milanovich* was concerned with the statutory construction of 18 U.S.C. § 641[4] insofar as it related to the crimes of larceny and receiving. It agreed with the Court of Appeals (Milanovich v. United States, 275 F.2d 716 (4th Cir. 1960)) that the Court of Appeals' understanding of the Supreme Court's construction of 18 U.S.C. § 2113(c) in Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959) was correct, and accordingly the Supreme Court, in *Milanovich*, could find no difference between the two statutes or the legislative histories to justify a different interpretation in respect to the issue before them. It held:

"With respect to the receiving statute before us in *Heflin*, we decided that 'Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the . . . robbers themselves,' 358 U.S. at [page] 420 [, 79 S.Ct., at page 454]. We find nothing in the language or history of the present statute which leads to a different conclusion here." (365 U.S. 551, 554, 81 S.Ct. 728, 729)

In our view the most that *Heflin* decided was that Congress did not intend to pyramid the punishment of bank robbers merely because they received, possessed, concealed, etc. the proceeds of the robbery. It did not intend to, nor did it, state that Congress had no authority to make such acts criminal. After reviewing the legislative history, the Court, in *Heflin*, stated:

"This clue to the purpose of Congress argues strongly against the position of the Government. From these Reports it seems clear that subsection (c) was not designed to increase the punishment for him who robs a bank but only to provide punishment for those who receive the loot from the robber. We find no purpose of Congress to pyramid penalties for lesser offenses following the robbery. It may be true that in logic those who divide up the loot following a robbery receive from robbers and thus multiply the offense. But in view of the legislative history of subsection (c) we think Congress was trying to reach a new group of wrongdoers, not

---

4. "§ 641. Public money, property or records

"Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

"Whoever receives,[5] conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

. "Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

5. Possession is not made criminal.

to multiply the offense of the bank robbers themselves." (358 U.S. 415 pp. 419–420, 79 S.Ct. 451 p. 454)

Since 1961, when *Milanovich* was decided, the Supreme Court has cited it only once, although it has provided many courts of appeal with subject matter for endless discussion. *Cf.*, United States v. White, 440 F.2d 978 (5th Cir. 1971); United States v. Corson, 449 F.2d 544 (3rd Cir. 1971, en banc); Fuller v. United States, 132 U.S.App.D.C. 264, 407 F.2d 1199 (1968, en banc); McMillen v. United States, 386 F.2d 29 (1st Cir. 1967); Jenkins v. United States, 361 F.2d 615 (10th Cir. 1966).

In the one Supreme Court case, United States v. O'Brien, 391 U.S. 367, 380, 88 S.Ct. 1673, 1680, 20 L.Ed.2d 672 (1968), the court said:

"In the absence of a question as to multiple punishment, it has never been suggested that there is anything improper in Congress' providing alternative statutory avenues of prosecution to assure the effective protection of one and the same interest. Compare the majority and dissenting opinions in Gore v. United States, 357 U.S. 386 [, 78 S.Ct. 1280, 2 L.Ed.2d 1405] (1958).[28]

"[28]. Cf. Milanovich v. United States, 365 U.S. 551 [, 81 S.Ct. 728, 5 L.Ed.2d 773] (1961); Heflin v. United States, 358 U.S. 415 [, 79 S.Ct. 451, 3 L.Ed.2d 407] (1959); Prince v. United States, 352 U.S. 322 [, 77 S.Ct. 403, 1 L.Ed.2d 370] (1957)."

Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958) (most of the dissenters in *Milanovich* were the majority) reaffirmed the holding in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), namely, that Congress did have the power to outlaw and punish as separate offenses the severable ingredients of one compound transaction.

We, too, have had occasion to distinguish between the crimes of receiving and possession. In D'Argento v. United States, 353 F.2d 327, 334–335 (9th Cir. 1965), cert. denied 384 U.S. 963, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1966), the appeal was from a judgment convicting the defendant of theft from an interstate shipment and possession of the same goods (18 U.S.C. § 659). We distinguished *Milanovich* as follows:

"There [*Milanovich*] the defendant was charged with larceny and with receiving the same property taken. The distinction between that case and this one is that the second offense here is the possession of the stolen goods. The two offenses of larceny and the receiving of the stolen property would occur at the same time and would tend to merge. Here possession of the stolen property would be a continuing offense. No cases have been called to our attention holding that possession and receiving in this context are entitled to the same treatment. We do not consider Milanovich supra to be applicable here. There are two distinct offenses of theft and possession.

"There was no error in not requiring the Government to elect or in failing to instruct that there was only one offense."

Our decision in *D'Argento* has been relied upon by the Second Circuit in United States v. Ploof, 464 F.2d 116 (2d Cir. 1972); United States v. Meduri, 457 F.2d 330, 331 (2d Cir. 1972); and United States v. Cusumano, 429 F.2d 378, 381 (2d Cir. 1970), cert. denied sub nom. Riggio v. United States, 400 U.S. 830, 91 S.Ct. 62, 27 L.Ed.2d 61 (1970); in each case the court rejected the so-called rule of *Milanovich* in a larceny-possession situation.

In *Ploof* the court made the following observation relevant to the instant problem:

"Although appellants in the instant case were convicted of only one substantive offense—receiving and concealing a stolen motor vehicle—other Circuits uniformly have held that under the Dyer Act the offenses of transporting a stolen motor vehicle (§ 2312) and receiving and concealing it (§ 2313) are distinct offenses which

can be committed at the same time, with the same property, by the same person, who can be sentenced to consecutive prison terms for such distinct offenses. United States v. Thompson, 442 F.2d 1333 (6 Cir. 1971); Linkenauger v. United States, 357 F.2d 925 (6 Cir. 1966); United States v. Lankford, 296 F.2d 34 (4 Cir. 1961); Woody v. United States, 258 F.2d 535, 536 (6 Cir. 1957), aff'd by an equally divided Court, 359 U.S. 118 [, 79 S.Ct. 721, 3 L.Ed.2d 673] (1959); Madsen v. United States, 165 F.2d 507, 510 (10 Cir. 1947). We would see no reason for not following the other Circuits on this issue even if appellants had been convicted of substantive offenses under both § 2312 and 2313."

The First Circuit, in United States v. Sharpe, 452 F.2d 1117, 464 F.2d at 120. (1st Cir. 1971), was also concerned with a conviction of receiving *or* possessing certain goods stolen from an interstate railroad shipment in violation of 18 U.S.C. § 659. In answering the *Milanovich* argument the court stated, by way of dictum:

> *"Moreover, there is nothing inconsistent in being involved in the theft and being guilty of possession of stolen goods.* Since the defendant was not indicted for theft and was convicted only of possession, we need not reach the more difficult question of whether convicting a person of both theft and possession would be impermissible because it would result in pyramiding penalties for a single act." (452 F.2d at 1119) (Emphasis added.)

Since both words, stealing and possessing, are ingredients of one compound transaction, they are severable and connote entirely different meanings, including their dictionary meanings, and do not have, as Mr. Justice Frankfurter said in dissenting in *Milanovich*, the same merging quality as in stealing and receiving. He said there:

> "In short, taking and receiving, as a contemporaneous—indeed a coincidental—phenomenon, constitute one transaction in life and, therefore, not

two transactions in law." 365 U.S. at 558, 81 S.Ct. at 732.

We had occasion also in United States v. Le Pera, 443 F.2d 810 (9th Cir. 1971), to distinguish the *Milanovich* rule on an appeal from a conviction of aiding and abetting counterfeiting and conspiring to commit counterfeiting, by saying:

> "The appellant's reliance upon Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), and Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), is misplaced, for they prohibit the pyramiding of punishment in the way of consecutive sentences on two or more convictions for the same act or transaction." 443 F.2d at 813.

In sum, the construction of § 2113(c) in *Heflin* was not that receiving, possessing, etc. could not be separate crimes but rather that the penalties for such crimes could not be pyramided to the other crimes in § 2113.

Being satisfied, therefore, that we are not bound by the *Milanovich* rule in this case, we next approach the problem from another direction, *viz.*, the concurrent sentence doctrine enunciated and approved in Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 1387, 87 L.Ed. 1774 (1943). In that case the Supreme Court said:

> "The conviction under the second count is without constitutional infirmity. Hence we have no occasion to review the conviction on the first count since, as already stated, the sentences on the two counts are to run concurrently and conviction on the second is sufficient to sustain the sentence." 320 U.S. 105, 63 S.Ct. 1387.

The concurrent sentence doctrine of *Hirabayashi* has not been abolished by Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (see United States v. Holman, 436 F.2d 863, 867 (9th Cir. 1970)), and does not deprive us of jurisdiction. We could, as a matter of discretion, decline to review the evidence on one count but we will not so decline. United States v. LaMont,

447 F.2d 1311 (9th Cir. 1971); United States v. Fishbein, 446 F.2d 1201 (9th Cir. 1971); United States v. Lucero, 443 F.2d 64 (9th Cir. 1971); United States v. Washabaugh, 442 F.2d 1127 (9th Cir. 1971); United States v. Crouch, 442 F.2d 427 (9th Cir. 1971); United States v. Ruiz, 441 F.2d 1120 (9th Cir. 1971); United States v. McKinney, 433 F.2d 921 (9th Cir. 1970); United States v. Martinez, 429 F.2d 971 (9th Cir. 1970); United States v. Tamayo, 427 F.2d 1072 (9th Cir. 1970); United States v. Lazarus, 425 F.2d 638 (9th Cir. 1970); and Jordan v. United States, 416 F.2d 338 (9th Cir. 1969).

■ We have reviewed all the evidence in detail, and although no motion was addressed to the sufficiency of the evidence other than the question of value previously discussed, we are satisfied that there was ample evidence to convict on both counts.

The testimony at trial showed that the Bank in question was being renovated. On the evening of April 18, 1969, a contractor with several men, including the defendant, who was known under the fictitious name of Craig Adams, worked at the Bank from the hours of 6:00 P.M. to 11:00 or 12:00 P.M. The $4,510 of traveler's checks had been left by one of the tellers in a carriage when the Bank closed that day after business hours. The same men worked in the Bank the next day until noon. On Monday, April 21, 1969, the Bank employees discovered the checks missing. The uncontroverted proof showed that the checks were in different denominations printed on their face. 169 were $10 checks; 46 were $20 checks; 24 were $50 checks; and 7 were $100 checks, for a total of $4,510. $4,490 worth of these checks were signed, countersigned and cashed by someone using the fictitious name of George Teeter, in Las Vegas, Nevada, some time over that weekend, including Sunday, April 20th. At the trial there was expert testimony that the signatures "George Teeter" on each and every traveler's check cashed were in the handwriting of the defendant. No question has been raised as to venue. Some time later, the F.B.I. interviewed the defendant Tyler in jail where, in addition to the giving of specimens of his handwriting, including the name George Teeter, he also told the agents that he had purchased some $5,000 worth of Bank of America checks at a different branch of the Bank of America which, as was to be expected, turned out to be completely false. There was also testimony that on Monday, April 21st, Tyler paid his employer $100 with a $100 bill for some minor damage to a truck his employer had loaned him over the weekend, and that Tyler failed to work after that day for that employer. His salary when so employed varied between $125 and $150 a week.

Accordingly, we find that the evidence was more than sufficient to convict on both charges, larceny and possession, and that under the concurrent sentence doctrine sentences imposed and ordered to run concurrently vitiate any error caused by multiplicity.

Finding no error, we affirm.

DUNIWAY, Circuit Judge (concurring and dissenting).

I concur in the result reached by the majority, but solely on the ground that the concurrent sentence rule does not require that we reverse.

1. *Value of the stolen travelers checks at the time that they were stolen.*

I agree with the result reached by the majority, but the question is not as easily disposed of as the majority would make it appear. In each of the four cases cited by the majority, the charge was not stealing travelers checks or money orders, but receiving or possessing them. In United States v. Carter, 8 Cir., 1971, 448 F.2d 1245, the charge was unlawful possession of stolen money orders. The court relied upon the fact that the blank

money orders had been filled in thereby giving them the necessary value. See 448 F.2d 1246–1247. In Churder v. United States, 8 Cir., 1968, 387 F.2d 825, the charge was concealing and retaining stolen United States Postal Money Orders. The court relied upon testimony that the money order forms, when not filled in, had a value on the "thieves' market" sufficient to meet the statutory requirement. 387 F.2d at 832. In United States v. Kramer, 2 Cir., 1961, 289 F.2d 909, the charge was receiving, concealing and retaining post office money orders that were blank when stolen. The court relied on the fact that they had been filled in, thereby imparting to them a value sufficient to meet the statutory requirement. See 289 F.2d 920–921. In United States v. Evans, 8 Cir., 1971, 446 F.2d 998, the charge was unlawful possession of stolen blank money orders. The court relied upon testimony that blank money order forms had a value on the "thieves' market" sufficient to meet the statutory requirement. 446 F. 2d at 1000. Moreover, it also relied upon the fact that the money order had been filled in when the defendant received it so that it then had a value in excess of the statutory requirement. 446 F.2d 1001.

The question posed in this case, under count I of the indictment, is the value of blank travelers checks when they were taken from the bank. There is no testimony in this case dealing expressly with the "thieves' market" value as there was in two of the cases that the majority cites. There is, however, testimony of two bank officials, the substance of which is that such blank forms are in fact worth their face value because of the nature of travelers checks. Any person having possession of a blank check can negotiate it for its face value by filling in his name at the top and then, when he cashes the check, filling in his name again at the bottom. On this basis, the bank officials testified that the blank papers were worth their face value. I think that this testimony

is sufficient to support a finding that the value, when stolen, was in excess of $100, even though I may suspect that the price at which such blanks could be sold without their being filled in would probably be less than the face value.

## 2. *The Heflin-Milanovich question.*

The majority's attempted distinction of Milanovich v. United States, 1961, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773, will not hold water. A case does not decide only the exact factual question that it presents; it decides that question on the basis of a reason—a *ratio decidendi*—and it is authority in every other case in which that *ratio decidendi* is applicable. Nor does it make the slightest difference that *Milanovich* is a 5 to 4 decision. The inferior federal courts are just as much bound by such a decision as they are by a unanimous one. We do not sit to correct or limit what we may think to be erroneous decisions of the Supreme Court. Our duty is to follow them. The only court that can correct them is the Supreme Court itself. No decision of that court has overruled *Milanovich*. We should not undertake to do so under the disguise of distinguishing it. Nor should we try to accomplish the same result by purporting, contrary to its rationale, to confine it to its facts, when the Supreme Court has not done so.

The full effect of *Milanovich* cannot be understood without consideration of the principal case upon which it relied, Heflin v. United States, 1959, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407. There, Heflin had been convicted of bank robbery (18 U.S.C. § 2113(d)) and of receiving property stolen in the robbery (18 U.S.C. § 2113(c)), in addition to a conspiracy count. His sentences were: on the robbery conviction, ten years; on the receiving count, one year and one day; on the conspiracy count, three years. All sentences ran consecutively. On his motion to correct the sentences, the Court held that he could not be cumulatively sentenced for both taking and

receiving the same property, basing its decision on the legislative history of the Act. What is crucial is the Court's reasoning.

The Court could have relied upon the rationale of Prince v. United States, 1956, 352 U.S. 322, 77 S.Ct. 403, 1 L. Ed.2d 370. There, Prince had been convicted, under a two-count indictment for violating 18 U.S.C. § 2113(a) by (1) robbing a federally-insured bank and (2) entering the bank with intent to commit a felony. He was sentenced to 20 years for the robbery and 15 years for the entering, the sentences to run consecutively. The Court held, as a matter of statutory construction based upon Congressional intent, that the crime of entering merged with the crime of robbery when the latter was consummated. A person could be convicted of one or the other, but not of both. Congress had added the entering crime to the bank robbery statute to close loopholes and to insure that one who stole money from a federally-insured bank could be prosecuted for *some* federal crime, even though he did not display any force or violence or put anyone in fear—"necessary elements of the crime of robbery." 352 U.S. at 326, 77 S.Ct. at 405. The Court refused to interpret the statute as creating two completely independent offenses, of both of which a single robber could be convicted. "It is unnecessary to do so in order to vindicate the apparent purpose of the amendment." 352 U.S. at 327, 77 S.Ct. at 406.

In *Heflin*, the Court could easily have held that taking and receiving were part of a single offense, as it had held, in substance, that entering and robbing were a single offense in *Prince;* but it did not so hold. Instead, in *Heflin* the Court held that taking and receiving were two completely separate and independent crimes which are committed by separate and discrete sets of persons. The taking and entering provisions, involved in *Prince,* were directed toward one class of persons—the thieves—and the question became simply which crime

did that person commit. The taking and receiving crimes were directed toward two different classes of persons with no members in common—(1) the thieves, and (2) those who receive or possess the stolen loot but did not take it. One person could be a thief or a receiver but never both, *not* because the crimes take place at the same time and are inherently inconsistent, as the majority suggests. The Court specifically rejected that rationale in its holding: "It may be true that in logic those who divide up the loot following a robbery receive from robbers and thus multiply the offense." 358 U.S. 415, 419, 79 S.Ct. 451, 454. Rather, the articulated basis for the holding was that Congress intended the amendment adding the crimes of receiving, possessing, concealing, storing, bartering, selling, or disposing of the stolen bank loot to apply to an entirely new class of wrongdoers, and not to the bank robbers. Thus there is no basis for distinguishing between receiving and possessing in this regard: both are part of the amendment which the Supreme Court held was not applicable to the robber. That receiving and possessing may be qualitatively different—in that possessing is a "continuing crime"—is completely irrelevant.

I note particularly three features of *Heflin*. First, it dealt with the very statute here involved—§ 2113(c). Second, Heflin was not charged only with receiving. The charge was that he "did 'receive, *possess*, conceal, store and dispose'" (358 U.S. at 416, 79 S.Ct. at 452 (emphasis added)). Third, on this question the decision was unanimous.

*Milanovich, supra,* merely reiterated the *Heflin* position and applied it to a direct appeal of convictions for stealing government property (10-year sentence) and receiving and *concealing* the same property (5-year sentence) in violation of 18 U.S.C. § 641. The Court held that the convictions must be reversed, even though the evidence was sufficient to support a conviction on either count. Milanovich was entitled to a jury in-

struction that she could not be convicted of both taking and receiving. "[S]ince it is now impossible to say what verdict would have been returned by a jury so instructed, and thus impossible to know what sentence would have been imposed, a new trial is in order." 365 U.S. 551 at 555, 81 S.Ct. 728 at 730.

That the majority is rejecting the rationale of *Heflin* and *Milanovich* is clear from, *inter alia,* its quotation of Justice Frankfurter to the effect that stealing and receiving are contemporaneous and coincidental and constitute one transaction in life and in law. Justice Frankfurter was speaking for the minority in *Milanovich,* not for the majority, whose theory he rejected. As a member of the Supreme Court, Justice Frankfurter was free to reject the majority's rationale. As an inferior court, we are not.

The majority is not alone in its distaste for *Milanovich* or in its unwillingness to follow its rationale. It cites several Courts of Appeals decisions in support of its position. To these I now turn.

First, five cases are cited to indicate that there has been a great deal of discussion on the *Milanovich* problem. Four of the five did concern the Federal Bank Robbery Act. However, three of the five are constructions of *Prince* (dual convictions for robbery and entering with intent to rob) and did not involve the *Milanovich* problem at all. These are United States v. Corson, 3 Cir., 1971, 449 F.2d 544; United States v. White, 5 Cir., 1971, 440 F.2d 978; and McMillen v. United States, 1 Cir., 1967, 386 F.2d 29. One other involved the common law doctrine of merger as applied to various kinds of homicide. Fuller v. United States, 1968, 132 U.S. App.D.C. 264, 407 F.2d 1199, cert. denied 393 U.S. 1120, 89 S.Ct. 999, 22 L. Ed.2d 125. In the only case of the five which did involve *Milanovich,* Jenkins v. United States, 10 Cir., 1966, 361 F.2d 615, the court reversed for a new trial.

The majority next mentions three Supreme Court decisions, United States v. O'Brien, 1968, 391 U.S. 367, 380, 88 S. Ct. 1673, 20 L.Ed.2d 672; Gore v. United States, 1958, 357 U.S. 386, 78 S. Ct. 1280, 2 L.Ed.2d 1405, and Blockburger v. United States, 1932, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, to support the proposition that Congress has the power to make separate elements of a single transaction distinct and independent crimes. That is undoubtedly true, but it is irrelevant to the question of whether or not Congress exercised that power—a question of statutory construction on which *Milanovich* is based, and our sole concern here.

Next comes a series of cases which purport to distinguish *Milanovich* on various grounds. However, they are all inapposite. The *Milanovich* rule was found to be inapplicable in all of them, and correctly so, but the reasons given for that inapplicability are often muddled or plain erroneous. The reason that *Heflin* and *Milanovich* are inapplicable in those cases is that in each a totally different statute was involved. *Heflin* and *Milanovich* involved 18 U.S.C. § 2113 and § 641, in which Congress amended the basic larceny provisions in order to reach a new class of wrongdoers. None of the cases cited by the majority involved either of those statutes. United States v. Ploof, 464 F.2d 116, 2 Cir., 1972, and the five cases cited in the excerpt quoted from that case by the majority interpret the Dyer Act, 18 U.S.C. §§ 2312 and 2313. *Milanovich* was held not to bar dual convictions for transporting a stolen vehicle in interstate commerce and for concealing such a vehicle. However, Congress never amended the Dyer Act to close any loopholes or to bring within the Act's purview a new and distinct set of wrongdoers, as it did in the case of § 2113 and § 641. Both Dyer Act crimes were included in the original act of October 29, 1919, c. 89, § 4, 41 Stat. 325; and nothing in the legislative history of §§ 2312–2313 indicates, as it does in the

case of § 2113 and § 641, that one person was not to be convicted and sentenced for committing both crimes. Judge Friendly recognized and articulated the real reason for the inapplicability of *Milanovich* in *Ploof*. After stating that the *Milanovich* rule was one of statutory construction, he said: "In the instant case, aside from the fact that the Dyer Act, quite a different statute, is involved . . . appellants here were convicted of only one substantive offense —receiving and concealing a stolen motor vehicle." Fn. 6. The cases that he cites agree. The Fourth Circuit distinguished *Milanovich* in a Dyer Act case on the ground that "entirely different and unrelated statutes are being construed." United States v. Lankford, 4 Cir., 1961, 296 F.2d 34. And Justice Stewart, who wrote the majority opinion in *Milanovich*, said the same thing as a circuit judge in distinguishing *Prince*: § 2113 and §§ 2312–2313 are completely different statutes. Woody v. United States, 1957, 6 Cir., 258 F.2d 535, 536, aff'd by equally divided court, 1959, 359 U.S. 118, 79 S.Ct. 721, 3 L.Ed.2d 673. Thus *Ploof* and the other Dyer Act cases provide no ground for distinguishing *Milanovich* in this § 2113 case.

The other set of cases which are said to provide a basis for distinguishing *Heflin* and *Milanovich* from this § 2113 case all involve § 659—theft of goods from interstate commerce and possession thereof. Like the Dyer Act, and unlike the Federal Bank Robbery Act, § 659 has no legislative history to suggest that both crimes are not to be applied to one person where the same goods are involved. The theft and possession crimes were both part of the original act of February 13, 1913, c. 50, §§ 1, 2, 37 Stat. 670. *Milanovich* did not apply in the cases cited by the majority because a different statute with a different legislative history was being interpreted. Unlike Judge Friendly in *Ploof*, however, the judges who wrote the various opinions distinguishing *Milanovich* in the § 659 cases did not always articulate

the correct reasons for the distinction. For example, Judge Powell in D'Argento v. United States, 9 Cir., 1965, 353 F.2d 327, stressed supposed inherent differences between the acts of receiving and possessing:

"There [*Milanovich*] the defendant was charged with larceny and with receiving the same property taken. The distinction between that case and this one is that the second offense here is the possession of the stolen goods. The two offenses of larceny and the receiving of the stolen property would occur at the same time and would tend to merge. Here possession of the stolen property would be a continuing offense. No cases have been called to our attention holding that possession and receiving in this context are entitled to the same treatment. We do not consider Milanovich supra to be applicable here." 353 F.2d at 334–335.

But·*Heflin* and *Milanovich* hold explicitly that the 1940 amendment to the Federal Bank Robbery Act and the 1875 amendment to § 641 which added *both* the receiving and possessing crimes, were intended to reach an entirely new and separate class of wrongdoers and could not therefore be applied to the thief himself. Whatever the differences in the inherent natures of the two crimes (if there are any) they are irrelevant to the *Heflin-Milanovich* rule, based as it is upon the Congressional intent with respect to the amendments involved.

In my view, the *Heflin-Milanovich* rule is clearly applicable here. This court has twice followed and applied *Milanovich*. United States v. O'Neil, 9 Cir. 1970, 436 F.2d 571; Keating v. United States, 9 Cir., 1969, 413 F.2d 1028. It is equally applicable here. Like the majority, I commend government counsel for calling it to the attention of the trial court and of this court.

### 3. *The concurrent sentence doctrine.*

I agree with the court that even though, in my opinion, the case clearly falls within the *Heflin-Milanovich* rule, we can and should affirm on the basis of the concurrent sentence doctrine. In *Heflin, supra,* there were consecutive sentences. In *Milanovich, supra,* there were concurrent sentences, but the sentence under the first paragraph of 18 U.S.C. § 641, was ten years, the sentence under the second paragraph of that section, dealing with receiving, concealing, or retaining, was five years. The concurrent sentence doctrine obviously did not apply in *Heflin.* The court required a new trial in *Milanovich* because the two sentences were not equal, and it was impossible to know on which count, if either, the jury might have convicted had it been properly instructed. Thus the court felt, quite properly, I think, that the concurrent sentence doctrine could not be applied because one could not tell whether on retrial Milanovich would be convicted of the more serious offense under 18 U.S.C. § 2113(b) or the less serious offense under section 2113(c). 365 U.S. 551 at 555, 81 S.Ct. 728, 5 L. Ed.2d 773. Our case is different. Here equal and concurrent sentences were imposed. This is the usual situation in cases where the concurrent sentence doctrine is applied and the doctrine necessarily assumes that, had the defendant been convicted on one count rather than two, the same sentence would have been imposed because the court, in fact, imposed the same sentence on each count and made the two concurrent with each other. Our decisions in *O'Neil, supra,* and *Keating, supra,* are not to the contrary. In each, as in *Milanovich,* a heavier sentence was imposed under the robbery count than under the § 2113(c) count or under the retaining and receiving count under § 641. On the other hand, in *D'Argento, supra,* as an alternative ground, we did apply the concurrent sentence rule where the sentences were apparently equal. This case, in my opinion, falls within the concurrent sentence rule and for that reason I concur in the affirmance of the judgment.