961 F.2d 1565
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Luis ZULETA, Defendant, Appellant.
UNITED STATES, Appellee,
v.
Jorge ZULETA, Defendant, Appellant.
 Nos. 91-1419, 91-1420.
 United States Court of Appeals,
First Circuit.
 May 15, 1992
 
 John F. Cicilline for appellant Luis Zuleta.
 William T. Murphy, by Appointment of the Court, for appellant Jorge Zuleta.
 Zechariah Chafee, Assistant United States Attorney, with whom Lincoln C. Almond, United States Attorney, was on brief for appellee.
 Before Torruella, Circuit Judge, Campbell and Weis,* Senior Circuit Judges.
 WEIS, Circuit Judge.
 
 
 1
 Defendant Luis Zuleta was convicted on charges of possession of cocaine and conspiracy. His brother, co-defendant Jorge Zuleta, was convicted of conspiracy.
 
 
 2
 The defendants were indicted as a result of their participation in the sale of cocaine to an undercover agent by their brothers Juvenal and Nerio Zuleta. The sale took place at Juvenal's apartment in Boston on July 6, 1990, at approximately 8:30 p.m.
 
 
 3
 An informant made arrangements with Juvenal to purchase four kilos, later reduced to three kilos, to occur on July 6. When the informant arrived at Juvenal's apartment to complete the transaction, Juvenal informed her that he had only two and one-half kilos on hand, but that another half kilo would soon arrive. A few minutes later, a half kilo taken from Luis Zuleta's residence was delivered to Juvenal and the sale was completed. The Zuletas were arrested soon afterwards.
 
 
 4
 Defendants Luis and Jorge Zuleta lived in a townhouse on Douglas Avenue, a few hundred yards away from Juvenal's apartment. The townhouse was leased to Luis and was the residence of his wife Anna Marie Ocampo and her mother, as well as Jorge Zuleta.
 
 
 5
 Shortly before 8:30 p.m. on July 6, 1990, an agent conducting a surveillance of the townhouse observed Luis waiting at his front door for two men. The men entered the townhouse empty handed, but emerged within a few minutes with a package which they took to Juvenal's apartment. At that point, the informant observed that the package contained a half kilo of cocaine.
 
 
 6
 Soon after the two men left the townhouse, Jorge emerged carrying an empty bag and started to walk toward Juvenal's apartment. Before he arrived there, he was arrested by undercover agents.
 
 
 7
 At about 9:00 p.m., other agents came to the townhouse and found Luis there together with the Ocampos. Luis refused to allow a search of the premises without a warrant and tried several times unsuccessfully to reach an attorney by telephone.
 
 
 8
 The agents obtained a warrant by telephone and began a search at about 11:20 p.m. They located a beeper in the living room. In the kitchen closet, they found a plastic bag containing five cans of acetone, rolls of tape, paper mouth and nose masks, a bottle of inositol, and a large piece of plastic wrapping. This paraphernalia is commonly used to dilute pure cocaine. In addition, cocaine residue was found on one can of acetone and Luis' fingerprints were found on another.
 
 
 9
 Both Luis and Jorge had been present in Nerio Zuleta's apartment on May 29, 1990, when the informant had negotiated a prior, aborted sale with Juvenal. Luis and Jorge were not present for the whole conversation, but came into the room after most of the arrangements had been made. Although they did not contribute to the discussion, they were present when the following dialogue occurred:
 
 
 10
 Juvenal stated that they would "confirm everything ... tomorrow" and then that "before we confirm, I'll come to your house."
 
 
 11
 Juvenal then stated, "We'll change there at the Marriott Hotel." The informant clarified at the "Guest Quarters." Juvenal agreed.
 
 
 12
 The informant said, "I'm going to ask you for a sample." Juvenal responded, "No, I'll give you a sample."
 
 
 13
 The informant then declared that "if we're going to do something I'll call you and let you know how we're going to make the buy, okay?"
 
 
 14
 Between inaudible statements by Juvenal, the informant stated, "It's so expensive."
 
 
 15
 When the Zuletas apparently were unable to secure the desired amount of cocaine, negotiations took place for the purchase of a smaller quantity. On June 28, the informant accompanied by an undercover agent met with Juvenal and Nerio and arranged for the July sale. Luis and Jorge were not present on that occasion.
 
 
 16
 On appeal, Luis and Jorge raise a number of issues challenging their convictions. We will discuss these points in turn.
 
 
 17
 Defendants contend that the affidavit for the search warrant did not establish probable cause, specifically because the Magistrate was not told that the two men entered the townhouse with empty hands and left with the package.
 
 
 18
 Magistrates are entitled to draw reasonable inferences from the facts in an affidavit, United States v. Drake, 673 F.2d 15, 18 (1st Cir. 1982), and their determinations of probable cause are given deference. Illinois v. Gates, 462 U.S. 213, 238 (1983). In any event, in marginal cases this Court resolves any doubts in favor of the warrant. Drake, 673 F.2d at 19.
 
 
 19
 Here, enough information was supplied to the Magistrate so that he could infer that cocaine had been brought from the townhouse to Juvenal's apartment. The telephonic affidavit stated that two men came out of Luis' and Jorge's townhouse, entered a blue vehicle, drove to Juvenal's apartment, carried a package inside, then unwrapped the package to reveal a half kilo of cocaine. In addition, the Magistrate stated that he "judicially noted" an earlier affidavit for a search of Juvenal's apartment. He concluded: "Alright, so the connection is made then in my own mind between [Juvenal's apartment] and what you seek with respect to [Luis' townhouse]." That earlier affidavit detailed the arrangements for the July 6 drug transaction. The record establishes an adequate basis for the search warrant and, consequently, we reject defendants' challenges to its validity.
 
 
 20
 Next, the defendants argue that the trial court erred in failing to order the production of all notes prepared by detective Linehan, the undercover agent to whom the sale was made. At the conclusion of Linehan's direct testimony, the government provided the defense with a copy of notes discussing the meeting on May 29, 1990, at which Luis and Jorge were present. The court examined Linehan's other notes in camera, found that they were cryptic and concerned meetings unrelated to these defendants, and on that basis the trial judge denied further production.
 
 
 21
 A defendant has a right to discover statements that relate to the testimony of a government witness, although they only indirectly implicate the defendant. In United States v. Principe, 499 F.2d 1135, 1139 (1st Cir. 1974), we emphasized the obligations of the government to make a full disclosure. We concluded, however, that the defendant was "wrong ... insofar as he insists that ... any failure to disclose, no matter how harmless or innocent, requires striking a witness' testimony or a mistrial." Similarly, in United States v. Sharpe, 452 F.2d 1117, 1119 (1st Cir. 1971), we noted the necessity of demonstrating prejudice.
 
 
 22
 Here, the government produced the notes for inspection by the trial judge, who found no necessity for disclosure to the defense. We review this ruling for an abuse of discretion and, under the circumstances, find none. The trial judge was in a particularly advantageous position to determine whether the additional notes had any relevance, or would be of help to defendants. We will not disturb his determination that additional disclosure would have been of no benefit to defendants.
 
 
 23
 Defendants also insist that the district court should have granted a mistrial because one of the jurors drove his car down Douglas Avenue, where the defendants lived, one evening during the trial. After becoming aware of the juror's actions, the district judge conducted an interrogation in the presence of counsel. The juror stated that it was dark when he drove by the area and he did not see anything. During the trial, a number of photographs of the area were admitted into evidence. In these circumstances, we conclude that the trial judge did not abuse his discretion in denying a motion for a mistrial.
 
 
 24
 Both Luis and Jorge contend that the record contained insufficient evidence to sustain their convictions. We do not agree. Both defendants were present during part of the conversation between Juvenal and the informant during which the earlier drug transaction was arranged. It is significant that the conversation continued without interruption even though Luis and Jorge had entered the room and could hear the discussion. Moreover, Luis rented the townhouse where a half kilo of cocaine and drug paraphernalia were stored. He also waited for and allowed entry to the two men who secured the half kilo and delivered it to Juvenal so as to complete the previously arranged three kilo deal.
 
 
 25
 The evidence against Jorge was not as extensive, but we believe it was adequate to allow the jury to find he was a participant in the scheme. In addition to being in the townhouse when the half kilo was turned over to the two men, he was present in Juvenal's apartment when the prior, aborted transaction was being planned. At the time he was arrested, he was on the way to Juvenal's apartment with an empty bag which the jury might have inferred was to be used to carry back some of the money obtained from the sale. A defendant's presence during critical stages of a conspiracy, together with other circumstantial evidence, may establish participation in the conspiracy. See United States v. Benabente Gomez, 921 F.2d 378, 381 (1st Cir. 1990).
 
 
 26
 Viewing the testimony and the inferences in favor of the government as we are required to do in the posture of this case, we cannot say that there was insufficient evidence upon which the jury could reach its verdict.
 
 
 27
 Luis also asserts that the district court should have suppressed a statement he made soon after the police arrived at his townhouse. The record, however, shows that Luis was properly informed of his rights, voluntarily made the statement, and had not yet asserted his right to counsel. Thus, the statement was admissible. Moreover, prior to trial, Luis' counsel entered into a stipulation with the government that provided for suppression of other statements, but for admission of the statement now challenged.
 
 
 28
 Finally, Luis argues that the trial judge erred in calculating his sentence on the basis of the three kilogram quantity rather than the half kilo that came from his townhouse. The judge concluded that in the circumstances here, "it was reasonably foreseeable that the 500 plus grams that were delivered or handed over to Mr. Naranjo and Mr. Corral for delivery to the other brothers were to be part of a larger transaction." Note 1 to section 1B1.3 of the Sentencing Guidelines provides that a defendant is accountable for the action of others in furtherance of joint criminal activity if that conduct was reasonably foreseeable. The district judge did not err in so deciding in the circumstances here.
 
 
 29
 The judgments of the district court will therefore be
 
 
 30
 Affirmed.
 
 
 
 *
 Of the Third Circuit, sitting by designation